[Crim. No. 8969. In Bank. Dec. 29, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD CHANEY, Defendant and Appellant.

S. Carter McMorris for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse, John L. Giordano and Edward A. Hinz, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

PEEK, J.—Defendant appeals from an order granting probation following his conviction of receiving stolen property. (Pen. Code, §§ 496, 1237, subd. 1.)

The record reflects that a men's clothing store in Sacramento was burglarized by a group of teenage boys, and within a two-day period the sheriff took several of them into custody. They identified defendant as having been involved in the burglary and as having possession of some of the stolen articles. The articles were easily identifiable by description and manufacturer's label.

Before the authorities contacted or sought to arrest defendant, who was then 19 years of age and had no prior criminal record, he appeared with his mother at the sheriff's office and surrendered stolen items which he had acquired. Thereafter he was questioned, alone, by the inspector assigned to the investigation of the burglary. Statements, constituting a confession of receiving stolen property, were made by defendant during this interrogation, and were introduced in evidence by the prosecution at the subsequent trial.

It appears from the statements, as testified to by the inspector, that defendant had met some acquaintances who informed him of the burglary, told him that they could not use certain articles of clothing and advised him that if he wished such items he could pick them up at a designated apartment; that defendant went to the apartment, picked out the articles he wanted and took them with him to his home. The inspector further testified that defendant admitted that he knew the items were stolen when he took them.

A second confession was taken from defendant the following morning and transcribed by a reporter. At the trial the transcript of the second statement was marked for identification but not put in evidence, although the prosecutor referred to excerpts from it in an attempt to impeach defendant's testimony.

Aside from defendant's statements there is no substantial

evidence of his guilt of the crime of receiving stolen goods, the statements being the only reliable evidence going to the issue of his knowledge that the goods were, in fact, stolen. (Pen. Code, § 496.)

It is claimed that because the interrogation was conducted without compliance with the requirements of *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], it was reversible error not to exclude defendant's statements.

Following *Escobedo* we held in *Dorado* that absent extraordinary circumstances the introduction in evidence of a confession by an accused requires reversal if that confession was obtained under circumstances where ''(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried on a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights.'' (62 Cal.2d 353-354.)

Because defendant was substantially implicated in the burglary by the statements of a number of those involved prior to the time he appeared at the sheriff's office, and at that time surrendered identifiable, stolen articles, we are compelled to conclude that any further investigation concerning him was no longer a ''general inquiry into an unsolved crime,'' but rather that such investigation had focused upon him as a ''particular suspect.''

As to the second requirement of *Dorado,* that the accused be in custody, defendant in the instant case was not arrested until after he made his first statement. However, for purposes of applying the *Dorado* principle it is unimportant that he was not booked immediately upon arriving at the sheriff's office. (*People* v. *Furnish, ante,* pp. 511, 516 [47 Cal.Rptr. 387, 407 P.2d 299].) It readily can be inferred that because of information already in the hands of the inspector, defendant was not free to leave from the moment he appeared. Nor is the fact that his appearance was voluntary of particular significance. This merely made it unnecessary for the sheriff to seek him out and compel him to submit to custody.

A more difficult problem is whether, when defendant was

questioned, the authorities were carrying out a process of interrogation which lent itself to eliciting incriminating statements. The People argue that because defendant voluntarily appeared at the sheriff's office and indicated his desire "to clear the matter up," the confessions taken from him were spontaneous and unsolicited. It is obvious, of course, that the People's contention would have to fail as to the second, recorded confession. Nevertheless, if such confession failed to add anything to defendant's earlier statements and if such earlier statements were properly received, the error in admitting the second, illegally obtained confession would not have been prejudicial. (*People* v. *Jacobson, ante,* pp. 319, 330 [46 Cal.Rptr. 515, 405 P.2d 555] ; *People* v. *Cotter, ante,* pp. 386, 397-398 [46 Cal.Rptr. 622, 405 P.2d 862].) Thus, even if the recorded confession had been placed in evidence, the circumstances surrounding the earlier statements would have to be examined.

In *People* v. *Cotter, supra, ante,* p. 386, we held that a series of confessions to murder determined to be of the first degree was properly admitted because they were made during the investigatory rather than the accusatory stage, that is, absent a process of interrogation designed to elicit incriminating statements. The crucial confession in that case was made after defendant called officers, advised them that he had attempted to kill a woman and that he could be found at a particular address. When police arrived he identified himself, stated that he had stabbed the woman, and surrendered the knife he had used. He was handcuffed and placed in a police car. While being driven to the station he was asked what had happened at the scene of the crime, and thereafter made a full confession in narrative form without prompting from the officers. In reference to *Dorado* and *Escobedo,* we stated in the *Cotter* case at page 393: "Those cases deal with the inadmissibility of statements made by an accused during the accusatory stage, which statements are inadmissible in evidence unless the accused was duly forewarned of his rights to counsel and to remain silent. They were aimed at restraining law enforcement officers, once the accusatory stage has been reached, from the use of inquisitorial techniques in seeking to prove the charge against the accused out of his own mouth. They were never intended to discourage a defendant from volunteering to the police his complicity in the perpetration of a crime nor to prohibit the police from receiving and acting upon such confessions. Cer-

tainly, here, there were no inquisitorial techniques or processes of interrogation, designed to elicit incriminating statements, engaged in by the arresting officers when they were in the police car.''

In the instant case, unlike the situation in *Cotter,* two days had transpired since the commission of the crime, the investigating officer was fully aware of ''what had happened'' constituting the crime and was further aware of those persons who were implicated, including defendant. Defendant's appearance at the sheriff's office with some of the stolen goods confirmed that prior knowledge. In this situation defendant, although accompanied by his mother, was taken into an interrogation room, alone, for the purpose, as stated by the inspector, of ''being investigated for burglary.'' By inference, at least, the inspector conceded that his purpose was to extract incriminating statements when, he stated, he advised defendant that he had been implicated in the actual burglary by the statements of others, ''that it was not necessary for him to make a statement at this time unless he so wished,'' and that ''anything he might say could be used against him.''

In view of the foregoing ''total situation,'' and particularly the place setting of the interview and prior knowledge of the inspector (*People* v. *Stewart,* 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97]), little doubt is left that defendant confessed during a process of interrogation designed to elicit incriminating statements. While the record is meager as to the manner in which the interview was carried on, it does appear that defendant was interrogated rather than merely given an opportunity to make any statement he wished. Such questioning, as reported, revealed that defendant, when he took the items, was aware of the fact that they were stolen, a critical element of the crime of receiving stolen property. It thus appears that the purposes sought to be accomplished by the imposition of the limitations of *Escobedo* and *Dorado,* as set forth in *Cotter,* compel a determination that in the instant case the interrogation was accusatory rather than investigatory.

Concerning the fourth element as set forth in *Dorado,* defendant concedes that there is sufficient evidence that prior to confession he was apprised of his right to remain silent. But the record fails to establish that he was advised of his right to counsel. The inspector, in response to questions whether he so advised defendant, stated: ''I don't recall advising him directly that he could have an attorney or he

couldn't. I don't recall whether I specified to him."[1] It later developed on cross-examination that there was no indication in the inspector's written report of his conversation with defendant that the latter had been advised of any of his rights, prior to the interview. In fact, the reporter, who took the recorded statement, testified that the required admonitions were not given to defendant in his presence.

In the absence of positive indications that the investigating personnel informed defendant of his right to advice of counsel prior to any interrogation, we must presume that such information was not afforded. (*People* v. *Lilliock*, 62 Cal.2d 618, 621-622 [43 Cal.Rptr. 699, 401 P.2d 4].) Nor is there any evidence that defendant knowingly waived the foregoing rights. (*People* v. *Bilderbach*, 62 Cal.2d 757, 762 [44 Cal.Rptr. 313, 401 P.2d 921].)

The prosecution's contentions that it is sufficient prior to interrogation to warn a suspect of his right to remain silent even though he is not apprised of his right to counsel have been refuted. (*People* v. *Stockman, ante*, p. 494 [47 Cal. Rptr. 365, 407 P.2d 277].) In the *Stockman* case we held at page 500 that "Both warnings, and particularly the latter [right to counsel], must be given." (See also *State* v. *Neely* (1965) 239 Ore. 487 [398 P.2d 482, 486-487].)

Since the independent evidence of defendant's knowledge that the items in his possession were stolen is not substantial, he could not have been convicted except for the improper admission of his incriminating statements, and the error compels a reversal. For that reason it becomes unnecessary to consider the merits of other alleged errors which we deem unlikely to occur again on any retrial.

The order granting probation is reversed.

Traynor, C. J., Peters, J., and Tobriner, J., concurred.

BURKE, J.—I dissent. The trial judge quite properly suspended the imposition of sentence in this case, placed defendant on probation for three years and ordered restitution. No doubt this was done because of defendant's previous good record and his voluntary act in going to the police station with his mother to return the stolen goods and to make a clean breast of his complicity in receiving stolen property.

When the police officer advised him he was investigating

---

[1] The present cause was tried prior to the decisions in *Escobedo* v. *Illinois, supra*, 378 U.S. 478 and *People* v. *Dorado, supra*, 62 Cal.2d 338.

the burglary and that defendant need not make a statement at that time unless he so wished defendant said he had decided to voluntarily come to the station himself, with the items, and clear the matter up. When defendant was further advised that anything he said might be used against him he nevertheless told his story which the officer testified to at the trial.

As this court said in *People* v. *Cotter, ante,* pp. 386, 393, 396 [46 Cal.Rptr. 622, 405 P.2d 862], the cases of *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], "were aimed at restraining law enforcement officers, once the accusatory stage has been reached, from the use of inquisitorial techniques in seeking to prove the charge against the accused out of his own mouth. They were never intended to discourage a defendant from volunteering to the police his complicity in the perpetration of a crime nor to prohibit the police from receiving and acting upon such confessions. Certainly, here, there were no inquisitorial techniques or processes of interrogation, designed to elicit incriminating statements, engaged in by the . . . officers . . . .

"It is noteworthy that in *Escobedo, Dorado* and *Stewart* the defendants were denying complicity and the police were openly accusing them and urging them to tell the truth. By contrast, here the defendant was merely asked to state what had happened. He was not being accused of a crime which he had previously denied committing, which was the case in *Escobedo, Dorado* and *Stewart,* but in fact was asked concerning a crime which he had already freely admitted having committed.

"Neither this court, nor the United States Supreme Court, has ever taken the position that the desire of a guilty man to confess his crime should be stifled, impeded, discouraged, or hindered in any way. The contrary is true."

Here, the statements made to the investigating officer were entirely free and voluntary. Defendant's mother testified that defendant had called her to advise her that he was going to the police station to return the goods and clear up the matter—she asked him to wait so that she could accompany him, which she did.

I would affirm the conviction and the order placing defendant on probation.

McComb, J., and Mosk, J., concurred.