[Crim. No. 4780.   Third Dist.   Aug. 16, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. DAVE R. LANTZ, Defendant and Respondent.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Charles P. Just, Deputy Attorneys General, for Plaintiff and Appellant.

Paul Ligda, Public Defender, for Defendant and Respondent.

FRIEDMAN, J.—At defendant's preliminary examination his oral confession, admitted over objection, was the only evidence connecting him with the burglary. Bound over for trial, he moved to set aside the information. The superior court granted his motion, concluding that his confession was gained without an effective waiver of the rights enumerated in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The People appeal.

''The issue, as with all matters of waiver, is to be resolved upon the whole record.'' (*People* v. *Lara,* 67 Cal.2d

365, 376 [62 Cal.Rptr. 586, 432 P.2d 202].) ▮ The transcript of the defendant's preliminary examination is puzzling; features cryptic testimony left in midair; fills in, by cross-examination, some gaps left by the direct and leaves some unanswered questions. Possibly defendant's trial will result in a more satisfactory record, shedding a different light on the waiver issue. From the present record, we conclude that the prosecution met its burden of demonstrating ". . . that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to . . . counsel." (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 475 [16 L.Ed.2d at p. 724].) In summary, defendant participated in a trifurcated jail interview, repeatedly received the full warning delineated by *Miranda,* never sought silence or an end to questioning, then consciously and deliberately confessed after seeking and receiving confirmation that his two confederates had admitted guilt.

The premises of a veterans' club in Georgetown, El Dorado County, had been burglarized. Several weeks later defendant was arrested and jailed on an unrelated charge. Detective Baker of the sheriff's office was investigating the burglary. On October 21, 1967, he interviewed defendant at the jail. Having administered the warning required by *Miranda,* he asked whether defendant understood these rights. After an affirmative answer, he asked whether defendant wished to discuss the burglary of the veterans' club. Defendant answered in the affirmative, then denied all participation in the burglary.[1] Baker then told him that two other participants had involved him and that some of the stolen property had been recovered. Baker said it was "possible" that he showed defendant citations naming two juveniles who had confessed. Baker did not remember the concluding part of the conversation, but he himself terminated it, intending to resume the questioning at another time. The conversation occupied 10 or 15 minutes.

Neither on direct examination nor on cross-examination was Baker asked whether defendant ever declined to talk. Instead, the record places in sequence his expressed willingness to discuss the crime and his assertion that he didn't do it.

[1] On direct examination by the district attorney, Baker testified that defendant expressed willingness to discuss the burglary, then testified, in response to a question whether defendant admitted the burglary, that he had not. At that point the direct examination moved to another topic without illuminating defendant's expressed willingness to talk. Cross-examination, however, revealed that defendant's expressed willingness to discuss the burglary was followed by a positive denial of complicity.

Five days later, on October 26, another officer, Sergeant Daveson, visited defendant in jail. Baker testified that he himself had not requested Daveson to see defendant. Daveson, however, testified that Baker had told him that defendant wanted to see him in order to confirm whether confessions had been made by others. There is no revelation covering the circumstances or identifying the recipient of defendant's request for Daveson's visit. Notwithstanding the seeming inconsistency in the two officers' testimony, it does appear that defendant sent for Daveson, motivated by lack of confidence in Baker's story of confederates' admissions. Daveson confirmed existence of the confessions, then left defendant and reported the conversation to Baker. Daveson himself did not interrogate defendant. Their conversation occupied about five minutes.

The next day, October 27, Baker paid defendant a second visit. Baker again advised him of his rights and asked him whether he wanted to change his story since talking to Daveson. Defendant replied that he had thought it over and might as well clear up his own part in the matter. He again received the standard enumeration of rights; responded in the affirmative when asked whether, with these rights in mind, he wished to talk, signed a form,[2] then confessed that he and two juveniles had burglarized the veterans' club.

This is not a case where the confession is inadmissible because the officers elicited it by continuing their interrogation techniques after the arrested man had once invoked his constitutional privilege of silence, e.g., *People* v. *Fioritto* (1968) 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625].[3] (See also, *People* v. *Lewis* *(Cal.App.) 68 Cal.Rptr. 790.) The transcript before us reveals no refusal to talk, no expressed desire to break off communications, no other expression amounting to an invocation of the privilege of silence.

---

[2] Possibly the form was a written waiver of the sort commonly used by police. It is not part of the record, however.

[3] The *Fioritto* case involved a specific application of the following statement in the majority *Miranda* opinion, 384 U.S. at pages 473-474 [16 L.Ed.2d at pp. 722-723]: ''Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.''

*A rehearing was granted by the Court of Appeal on June 26, 1968. The opinion on rehearing was certified for nonpublication.

On the other hand, this does not fall within the group of cases where, after a first interrogation is broken off, the suspect voluntarily initiates a later conversation in which, after adequate police warning, he confesses his crime. Under those circumstances the confession is constitutionally acceptable, e.g., *People* v. *Lara, supra,* 67 Cal.2d at p. 392; *People* v. *Treloar* (1966) 64 Cal.2d 141, 147 [49 Cal.Rptr. 100, 410 P.2d 620]; *People* v. *Tomita* (1968) 260 Cal.App.2d 88, 92 [66 Cal.Rptr. 739] (hg. den.). Here there was mutual recognition of the interview's temporary cessation and mutual expectation of its renewal.

*Miranda* points out that "lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights." (384 U.S. at p. 476 [16 L.Ed.2d at p. 724].) It also declares: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. at p. 478 [16 L.Ed.2d at p. 726].) Here the interviews were brief and not designed to nag a waiver out of a weary prisoner. The first interrogation 10 or 15 minutes in length, came to an end after defendant's denial of guilt was countered by a statement that others had implicated him.[4] It is fairly apparent, though regrettably not made explicit, that both parties to the interrogation expected its resumption after defendant sought Daveson's confirmation of the accomplices' confessions. Defendant would have had no reason to send for Daveson except as the prelude to further discussion with Baker. Inferably, defendant trusted Daveson, not Baker, and was willing to consider a confession once he had assurance against police trickery. The communication process was a piecemeal one, occupying brief intervals of three separate days. It was never broken off, however. Perhaps the process may be described as the "negotiation" of a confession. At any rate, after defendant was satisfied that he was not the subject of trickery, he received a repeated enumeration of his rights and affirmatively answered the question whether, with these rights in mind, he was willing to talk. His waiver of silence was explicit in terms, requiring neither presumption nor inference. (*Miranda* v. *Arizona, supra,* 384 U.S.

---

[4]Good faith confrontation with the confessions of accomplices is an interrogation technique possessing no apparent constitutional vice. In *Fioritto, supra,* the confrontation occurred *after* the constitutional privilege had been invoked. (68 Cal.2d at p. 718.) The invocation of silence, not use of the confrontation, barred Fioritto's confession. Here the record shows no invocation of constitutional privilege.

at p. 475 [16 L.Ed.2d at p. 724].) That he had sought confrontation before uttering the words of waiver supplies assurance that the waiver was deliberate. There is no implication of fatigue or loss of resistive powers. He had been given the "right to choose between silence and speech" (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 469 [16 L.Ed.2d at p. 720]) and had chosen the latter. The record demonstrates an admissible confession.

Order reversed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied September 11, 1968, and respondent's petition for a hearing by the Supreme Court was denied October 9, 1968. Traynor, C. J., Peters, J., and Mosk, J., were of the opinion that the petition should be granted.