[Crim. No. 613.   Fifth Dist.   Feb. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MARVIN GENE BETTIS, Defendant and Appellant.

William S. Gregory, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Edward W. Bergtholdt, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Defendant was accused of issuing a check without sufficient funds and with intent to defraud in violation of Penal Code section 476a. Defendant waived his right to jury trial, and by stipulation the cause was submitted to the trial court for decision primarily on the transcript of the preliminary hearing. The court found defendant guilty as charged and he appeals from the judgment of conviction. His sole contention for reversal is that his confession was illegally obtained and was therefore improperly admitted into evidence against him.

The relevant facts are these: Defendant was arrested in Carson City, Nevada on charges that he had passed two bad checks in Al Tahoe, California. He waived extradition and was returned to California by Lieutenant Richard Lowe of the El Dorado County sheriff's office.

Before leaving Carson City, Lieutenant Lowe advised defendant of his constitutional rights by reading from a

printed card containing what is commonly described as the *Miranda* formula (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). He also asked defendant if defendant understood those rights and whether having them in mind he wished to talk to the lieutenant. Defendant replied that he understood his rights as enumerated and waived them; he also signed an express waiver. Then Lieutenant Lowe showed defendant two checks, including the one which was used to convict him, and asked ''if they were his.'' Defendant said that they were.

During the trip from Carson City to Al Tahoe, California, Lieutenant Lowe conversed with appellant about his family and similar matters. However, during the course of the conversation the lieutenant asked defendant if he was going to use the attorney (Mr. Ligda) who represented him in another trial. Defendant replied that he was. Then Lieutenant Lowe volunteered to notify the lawyer.

On the day following their return to California Lieutenant Lowe visited defendant in the county jail and obtained a signed confession. However, before obtaining the confession the lieutenant again advised defendant of his constitutional rights and appellant repeated that he waived them.

The main thrust of appellant's argument in support of his contention that his constitutional rights were violated when Lieutentant Lowe obtained his confession is that he had informed the lieutenant, during the trip back from Nevada, that he wanted Mr. Ligda to defend him. In short, relying on excerpts from *Miranda* v. *Arizona, supra,* and *People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625], appellant asserts that further police interrogation was impermissible once he advised Lieutenant Lowe that he was going to use Mr. Ligda to defend him and the lieutenant volunteered to notify the lawyer. In *Miranda* the United States Supreme Court stated: ''Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'' (384 U.S. 436, 473-474 [16 L.Ed.2d 694, 723, 86 S.Ct. 1602, 1627].) And in *Fioritto* our Supreme Court said: ''The central issue in this case, accordingly, is whether defendant's subsequent confession was admissible after he initially refused to waive his constitutional rights. Again, we look to the *Miranda* opinion for guidance, and on this point it could not be more explicit: 'Once warnings have been given, the subsequent procedure is clear. *If the individual indicates in any manner,*

*at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.* At this point he has shown that he intends to exercise his Fifth Amendment privilege; *any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.* Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been *once invoked.*' (384 U.S. 436, at pp. 473-474 [16 L.Ed.2d 694, at pp. 722-723, 86 S.Ct. 1602, at pp. 1627-1628, 10 A.L.R.3d 974].)

"By his refusal to waive his constitutional rights initially, defendant indicated that he intended to assert his rights—the privilege had been *once invoked*—and all further attempts at police interrogation should have ceased." (68 Cal.2d 714, 718.)

We do not believe that the instant case falls within the ambit of *Miranda* v. *Arizona, supra,* or *People* v. *Fioritto, supra.* Defendant was twice warned of his right to remain silent and to have counsel present at his interrogation before Lieutenant Lowe obtained his confession. On these two occasions appellant did not state or even suggest that he wished to remain silent or that he wanted a lawyer present before he talked to the police officer. On the contrary, on each occasion he told Lieutenant Lowe that he understood his constitutional rights and waived them. Moreover, defendant's statement, during a casual conversation on the trip back to California, that he was going to use Mr. Ligda to defend him, was not of itself any indication that he wished to remain silent or that he wanted Mr. Ligda present during any subsequent interrogation by Lieutenant Lowe. If anything, it demonstrates that defendant understood his constitutional rights and that his confession was freely and voluntarily given.

■ Defendant's second contention is that his constitutional rights were violated by Lieutenant Lowe because prior to his confession the lieutenant did not advise him of the elements of the offense for which he was charged, the possible defenses which he could assert, and the possible penalties he would suffer if convicted. However, an essentially similar argument was rejected by our Supreme Court in *People* v. *Lara,* 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202]. In that case the court said: "Lara further complains, however, that the police did not inform him of 'the elements of the crimes charged against him,' 'the possible defenses available to him,'

and the fact that 'he could receive the death penalty.' There is no requirement that an accused be informed of these matters while the case is still in the stage of interrogation by investigating officers. Indeed, it would usually be impossible to do so, for at that stage no crimes have yet been 'charged against him'; the latter decision is subsequently made by the district attorney, after appraising the legal effect of the evidence gathered from all sources in the case.'' (67 Cal.2d at p. 376.)

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.