[Crim. No. 5473. Third Dist. Mar. 30. 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
THORNTON WATKINS, Defendant and Appellant.

## Counsel

Oliver J. Northup, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**REGAN, J.**—Defendant appeals following judgment of conviction entered after court trial on one count of armed robbery. (Pen. Code, § 211.)

Defendant contends that his confession to the above charge was obtained in violation of the rules announced in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and that its introduction in evidence over his objection constitutes reversible error. We have concluded that this contention lacks merit and we sustain the judgment of conviction.

About 8:15 p.m. on April 25, 1969, defendant and two companions

entered and held up "Ed's Gun and Liquor Store" in the County of Sacramento. Defendant was identified as the robber with the gun. Cash and other property was taken. Defendant was apprehended in an open field in the vicinity of the crime and placed under arrest, taken to police headquarters where at 11 p.m. he was read his *Miranda* rights[1] by Officer Cole from the standard card; defendant filled in the blanks on the card by answering in the positive that he understood his rights and that he would talk to officers.

The next morning defendant was again advised of his rights by Inspector Kirkman and questioned. Defendant gave no incriminating statements to Inspector Kirkman.

At the conclusion of Kirkman's unfruitful conversation, Lieutenant Skaggs approached defendant, told him his story was not believed, and asked him if he wished to make any further statements at all. Defendant then asked if Skaggs would talk with him, and Skaggs so agreed. Skaggs readvised him of his rights. Defendant then asked Skaggs how he could get an attorney. Skaggs advised him that "he could either call one himself at any time or, if he didn't do that, when he appeared in court, they would ask him if he had funds with which to employ an attorney and that, if he didn't, no doubt the Public Defender would be appointed. I asked him if he desired an attorney present then and he said, no, he just wanted to know about it." Defendant then gave a complete confession to his participation in the crime.

### Admission of the Confession

Primarily, let it be noted that no question of prejudice is before this court. ■ Assuming error is found in the admission of the confession, it is prejudicial per se and compels reversal. (*People* v. *Sanchez* (1969) 70 Cal.2d 562, 576 [75 Cal.Rptr. 642, 451 P.2d 74]; *People* v. *Fioritto* (1968) 68 Cal.2d 714, 720 [68 Cal.Rptr. 817, 441 P.2d 625].) This is true whether the conviction is founded in whole or in part upon the confession; whether the confession is true or false, and even if there is clearly sufficient evidence other than the confession upon which to sustain the conviction. (*Jackson* v. *Denno* (1964) 378 U.S. 368, 376 [12 L.Ed.2d 908, 915 [84 S.Ct. 1774, 1 A.L.R.3d 1205].)

The Supreme Court in this state in three carefully reasoned recent deci-

---

[1]"I stated, 'You are hereby advised that, one, you have the right to remain silent. Two, anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned; and if you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.' "

sions has set definitive guidelines by which the police are to protect the *Miranda*[2] rights of defendants. *(People* v. *Randall* (1970) 1 Cal.3d 948 [83 Cal.Rptr. 658, 464 P.2d 114]; *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580]; *People* v. *Fioritto, supra,* 68 Cal.2d 714.)

We note at this point the holding in *People* v. *Randall, supra* at page 954: "On this appeal we accept that version of events which is most favorable to the People, to the extent that it is supported by the record. Thus, we must accept the testimony of Officer Ellson [Officers Kirkman and Skaggs] insofar as it is incompatible with that of the defendant and confine our review beyond such testimony to facts which are uncontradicted by the People. *(People* v. *Sanchez* (1969) 70 Cal.2d 562, 570-573 [75 Cal.Rptr. 642, 451 P.2d 74], petition for cert. dismissed 394 U.S. 1025 [23 L.Ed.2d 743, 89 S.Ct. 1646] (whether confession coerced or not); *People* v. *Johnson* (1969) 70 Cal.2d 469, 473, 476-478 [74 Cal. Rptr. 889, 450 P.2d 265] (whether waiver of rights under *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] was knowing and voluntary or not); *People* v. *Stoner* (1967) 65 Cal.2d 595, 598 [55 Cal.Rptr. 897, 422 P.2d 585] (whether confession was product of illegal search or not); *People* v. *Trout* (1960) 54 Cal.2d 576, 583 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418] (whether confession was voluntary or not).) . . .

*"Miranda,* of course, is not satisfied by a mechanical recitation of its four required warnings, even if this recitation precedes each of several interrogations of a suspect held in police custody. 'Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. (Fn. omitted.) At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.' (Italics added.) *(Miranda* v. *Arizona, supra,* 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 723, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

"We have interpreted these directives of the high court as imposing upon

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 486 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], which held that a defendant must be warned prior to custodial interrogation, in clear and unequivocal terms, of his right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to either a retained or appointed attorney.

the police a duty to respect the right of a suspect once in custody to decide to defer questioning, preclude it entirely, or delay it until he has had an opportunity to consult fully with an attorney. This obligation on the police to entirely terminate custodial interrogation upon invocation of the Fifth Amendment privilege is one of the primary 'protective devices' fashioned by *Miranda*. We have a constitutional responsibility to insure that 'extrajudicial statements of criminal defendants not be admitted at trial unless the full range of "protective devices" prescribed by *Miranda* was in operation at the time such statements were obtained.' (Fn. omitted.) (*People* v. *Ireland* (1969) 70 Cal.2d 522, 534 [75 Cal.Rptr. 188, 450 P.2d 580].)

"This duty to cease questioning only commences, however, upon a suspect's initial indication that he wishes to exercise his Fifth Amendment privilege. If a suspect is willing to discuss his case fully with police officers after having been taken into cusody and advised of his rights, *Miranda* imposes no constitutional inhibition to continued questioning."

██ In the instant case, the defendant attempted to convince the court that he had indicated to the police that he wished questioning to cease. However, the court determined that, although defendant at one time halted questioning on one subject, he did not refuse to carry on any further conversation.[3]

We find there was no assertion by the defendant of his desire to invoke his Fifth Amendment privilege to consult with counsel prior to questioning or to have counsel present during any questioning. There is no evidence to sustain defendant's contention that he desired his custodial interrogation to cease. In fact, defendant was asked immediately prior to his confessing if he desired an attorney present then, and his answer was an unequivocal no.

██ Defendant also contends that the confession he offered to Lieutenant Skaggs is inadmissible in that it was the result of deception practiced upon him by Officer Kirkman. During Kirkman's interrogation he had told defendant that defendant's fingerprints were found on the getaway car. This statement was untrue.

---

[3]"THE COURT: Well, I suggest that the defendant did refuse to discuss the bridge, that he did not refuse to discuss anything else, and did not refuse to carry on any further conversation. I recognize the *Miranda* rule is to the general effect that one who refuses to talk then must be left alone until or unless he sends for the officers, but I don't believe there was a refusal here. I can't find anything in the record that indicates that, except the defendant's testimony, and in that respect he was inconsistent in his statements made in answer to questions by counsel and quesions by the Court. It seems to me that he was fairly treated, that he was constantly informed of his rights, and that he did testify freely and voluntarily with a full awareness of his rights, all of his rights enumerated by the case of *Miranda* v. *Arizona*.

"So, I will hold the testimony and statements admissible."

■ Cases in California have established the proposition that deception which produces a confession does not preclude admissibility of the confession unless the deception is of such a nature to produce an untrue statement. (*People* v. *Connelly* (1925) 195 Cal. 584, 597 [234 P. 374]; *People* v. *Atchley* (1959) 53 Cal.2d 160, 170-171 [346 P.2d 764]; *People* v. *Pendarvis* (1961) 189 Cal.App.2d 180, 186 [10 Cal.Rptr. 923].)

■ In *Connelly* defendant was told that his fingerprints had been found on the cash register. The court held that this was not calculated to produce an untrue statement although it was morally reprehensible. In *People* v. *Bowman* (1966) 240 Cal.App.2d 358, 371-372 [49 Cal.Rptr. 772], the police encouraged the defendant to talk to an accomplice and recorded the telephone conversation. The court applied the *Connelly* test and permitted the admissibility of the statements.

In the instant case defendant had been identified by the victim. He was found near the site of the robbery shortly thereafter. It is believed that the deception practiced by Officer Kirkman was not of the type to induce an innocent man to implicate himself in the crime.

The judgment is affirmed.

Friedman, Acting P. J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 28, 1970. Peters, J., was of the opinion that the petition should be granted.