[Crim. No. 528. Fifth Dist. Dec. 20, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD LEE HAMILTON, Defendant and Appellant.

William C. Kuhs under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws, Jack R. Winkler and Craig B. Stalker, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—Defendant appeals from a conviction of three counts of burglary after a trial to the court without a jury. The sole question presented by this appeal is whether, in obtaining defendant's confession, the two police officers who questioned him violated defendant's constitutional rights as defined by the United States Supreme Court in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

■ Defense counsel objected to the introduction of the confession, the only direct evidence linking defendant to the burglaries. The relevant facts are these: Charles McGriff was in custody in the Kern County jail, charged with committing the burglaries of which defendant was later convicted. A sheriff's deputy, Donald Sipe, learned that McGriff had telephoned a friend to have defendant get in touch with the sheriff's office to clear McGriff of the charges. About an hour afterward, Sipe and a fellow officer were leaving the parking lot adjacent to the sheriff's office when they recognized defendant, who had just arrived by automobile. The officers joined defendant in walking toward the main entrance to the sheriff's office, and asked him if he had come to talk to them. He answered, "Yes."

The officers took defendant to an interrogation room and placed him under arrest. Deputy Sipe advised defendant of his constitutional rights by reading from a printed card containing what was described as the standard *Miranda* formula (*Miranda* v. *Arizona, supra*). He was asked whether he understood those rights and whether, having them in mind, he wished to talk to the officers. Defendant replied that he understood his rights as enumerated, and that he wanted a lawyer.

Deputy Sipe then advised defendant that since he requested a lawyer, the officers could not talk to him at all, that "it just cut us off from having any conversation with him." Officer Sipe correctly analyzed the situation, but he nevertheless told defendant that the officers were of the opinion "that he had come to the Sheriff's Office to clear a Charles McGriff of the charges that was against him, and to admit some burglaries that were committed in the Oildale area." Officer Sipe testified that defendant then said he would talk to them. Sipe reread the *Miranda* rights from the card; defendant again said he understood them and that he would talk to them. After interrogation, estimated variously between one and two hours, the officers obtained a confession from defendant.

The defendant's version of what happened includes a considerably greater amount of questioning and activity on the part of the officers, than is revealed by the testimony of Sipe. Defendant said: "Q. Now Detective Sipe has testified that he read the constitutional rights to you at that time, and they have been put in the record. At that time what did you say in response to his request whether or not you understood your rights and whether or not you wanted to make a statement? A. I told him I would like to have an attorney.

"Q. At that point what did he say?

A. He told me that he couldn't tell me what he had on me or that he couldn't—that he was under the—or he said he thought I came down to clear McGriff.

"Q. What transpired after that?

A. He got out a tape of what McGriff had put on—put—a statement on tape. And he played the tape.

"Q. Did that tape implicate you in any way in these burglaries? A. Yes, it did.

"Mr. Allen: I am sorry. I still can't hear you. A. Yes, it did.

"Q. (By Mr. Kuhs) Did Detective Sipe at that point indicate to you that that statement could not be used against you in evidence?

A. No, he didn't.

"Q. What transpired after that?

A. I told him that I would agree to talk about it.

"Q. Was there any discussion as to other evidence that the police might have on you?

A. Yes. They told me they had enough to convict me. Or not—I wouldn't say convict. It was more or less in his words, in those—around the words. 'We have a lot more evidence.'

"Q. Did they offer to tell you what the evidence was? A. No, they didn't.

"Q. Did they make any statement relative to that evidence? A. No, they didn't.

"Q. At this point, after hearing the McGriff's tape, at this point were you read your constitutional rights again? A. Yes, I was.

"Q. And you agreed to make a statement. Is that correct? A. Yes."

After defendant testified as related above, Officer Sipe was not recalled to rebut the testimony, nor was the other officer who was present during the interrogation called to corroborate either Sipe or defendant. It may be that a more extensive *voir dire* was neglected in that the prosecuting attorney and the trial court mistakenly relied upon the Court of Appeal opinion in *People* v. *Fioritto* which, superficially at least, seemed to approve the admission of a statement by a defendant obtained under circumstances similar to those before us. However, at the time of trial the Supreme Court had granted a hearing in *Fioritto* and later, in *People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625], held a statement obtained under such circumstances to be inadmissible.

Viewing the evidence most favorably to respondent, continued questioning by the officers after defendant told them he wanted an attorney runs afoul of *Miranda* as explicated in *Fioritto*. While it is true, as the Attorney General points out, the interrogation by Deputy Sipe after defendant announced he wanted an attorney was not directly accusatory, nevertheless the officer's leading and suggestive statements constituted psychological persuasion of the kind proscribed by the court in *Miranda*.

The dissent to this opinion characterizes the officer's conduct as a tactical error, but it is just such tactics that are condemned in the language of *Miranda,* at page 1627 : ''Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'' In *Fioritto* the court gave this language strict and literal interpretation, characterizing it as ''the didactic language of the United States Supreme Court,'' and observed that such language ''shows no disposition to permit subsequent interrogation in the absence of counsel even if authorities believe there has been a change of circumstances.'' (P. 719.)

Since the officers continued to question defendant after he demanded an attorney, we are compelled, under the authority of *Miranda* and *Fioritto,* to hold the confession of defendant inadmissible.

The judgment is reversed.

Conley, P. J., concurred.

GARGANO, J.—I dissent. In my judgment the facts of this case are distinguishable from *People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625], relied upon by the majority to overturn the judgment. In *Fioritto* the conduct of the police officers was obviously calculated to trick the defendant into talking after he had elected to exercise his constitutional right to remain silent, and if countenanced could lead to innumerable attempts to circumvent the mandate of *Miranda* v. *Arizona,* 384 U.S. 486 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] ; after the defendant declined to waive his rights the officers confronted him with his accomplices, an argument ensued, the accomplices were taken away, and the officers again asked the defendant if he would like to sign a waiver of his rights and confess, which he did. Thus, the Supreme Court, in reversing Fioritto's conviction, pointed to

the "ratio decidendi" of *Miranda* and stated: "A principal objective of that decision was to establish safeguards that would liberate courts insofar as possible from the difficult and troublesome necessity of adjudicating in each case *whether coercive influences, psychological or physical, have been employed to secure admissions or confessions.*" (*People* v. *Fioritto,* 68 Cal.2d at p. 717.) (Italics added.)

In the instant case Deputy Sipe did not attempt, by trickery or otherwise, to induce defendant to talk against his will. At the most the officer experienced a normal reaction to appellant's sudden decision to be represented by counsel. The police were informed that defendant was voluntarily coming to the sheriff's office to clear his roommate, McGriff, who had been charged with committing certain burglaries in the Oildale area near Bakersfield, California. Moreover, when the police officers met defendant in the parking lot adjacent to the sheriff's office and asked if he came to talk to them, he answered "Yes." Later, after defendant was arrested and advised of his rights he said he wanted a lawyer. At this point he was correctly informed by Deputy Sipe that the officers could no longer talk to him. However, Sipe understandably added that the officers were of the opinion that defendant had come to the sheriff's office to clear McGriff and to admit some burglaries that were committed in the Oildale area. Defendant responded to this observation by stating that he wanted to talk to the officers. He was again advised of his rights and, when he said he understood, his statement was taken. According to Deputy Sipe this preliminary discussion took only two minutes.

It seems to me that the majority view has the effect of insulating, with what sometimes could be disastrous results, a defendant against the slightest tactical error by an interrogating officer no matter how innocent or innocuous the tactical error may be. Manifestly, this result impedes law enforcement without substantially serving the interests of justice. I believe that *People* v. *Fioritto, supra,* should not be construed to stand for this proposition.

A petition for a rehearing was denied January 14, 1969. Gargano, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied February 13, 1969.