[Crim. No. 15085.  Second Dist., Div. Four.  Mar. 13, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CLARENCE CONNOR, Defendant and Appellant.

Samuel Frizell for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey T. Miller, Deputy Attorney General, for Plaintiff and Respondent.

DUNN, J.—On April 6, 1966, appellant walked into a division of the Los Angeles Police Department and announced, "I have killed somebody." He was arrested, booked, placed in handcuffs and interrogated. Thereafter, he was charged with murder in the first degree and to the information so charging he first pleaded "not guilty" and "not guilty by reason of insanity." On the day set for trial he withdrew these pleas,

pled "guilty" to first degree murder and was sentenced to life imprisonment. He did not appeal that judgment. Approximately eighteen months later, he filed in the Los Angeles Superior Court a Motion to Set Aside Judgment and To Withdraw Plea of Guilty, which was denied. His appeal is from this order of denial (treated here as a petition for writ of habeas corpus).

The essence of the appeal is appellant's claim: that he gave a "confession" to police officers during an in-custody interrogation; that his then private counsel recommended that he plead "guilty" to avoid the death penalty; that such plea was entered approximately one month after the decision of the United States Supreme Court in *Miranda* v. *Arizona*; that neither he nor his attorney was aware of *Miranda*; that under *Miranda* his "confession" would not have been admissible in evidence against him; that had he or his attorney known of *Miranda* he would not have pleaded guilty; and that his plea, therefore, was made ". . . in ignorance of his rights and of the consequences of his act. . . ." (*People* v. *Campos* (1935) 3 Cal.2d 15, 17 [43 P.2d 274].)

The decision in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], was handed down June 13, 1966. While appellant's in-custody admissions[1] were obtained before that date, his first pleas were withdrawn and supplanted by a plea of "guilty" on July 7, 1966. Under this chronology, the rules set forth in *Miranda* would govern the admissibility of his admissions. (*People* v. *Woodberry* (1968) 265 Cal.App.2d 351, 354 [71 Cal.Rptr. 165].)

There is little doubt that the admonition given to appellant by the police officers preceding the in-custody interrogation was adequate at the time the interrogation took place, under the requirements in California laid down by *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. However, the admonition was deficient under *Miranda* since appellant was not informed of his right to have a lawyer appointed to represent him in event he was indigent. We are concerned with determining whether or not appellant waived his rights "voluntarily, knowingly and intelligently," as discussed in *Miranda* and later decisions, and also with ascertaining if

---

[1] Appellant's interrogated statement was not, technically, a "confession" as the full elements of such are lacking. See: *People* v. *Jones* (1965) 237 Cal.App.2d 499, 503 [47 Cal.Rptr. 40]; *People* v. *Beverly* (1965) 233 Cal.App.2d 702, 712-713 [43 Cal.Rptr. 743].

*Miranda* applies at all in view of circumstances now to be discussed.

I. *Were Appellant's Admissions Spontaneous Such That Miranda Rules Are Inapplicable?*

██ "There is no requirement that police stop a person who enters a police station and states that he wishes to confess a crime, or a person who calls the police to offer a confession or any other statement he desires to make." (*Miranda* v. *Arizona, supra,* p. 478 [16 L.Ed.2d p. 725]. And see: *People* v. *Smith* (1969) 268 Cal.App.2d 754, 756 [74 Cal.Rptr. 379].)

██ Here, appellant's initial statement "I have killed somebody," was a voluntary statement and would be admissible in evidence. After making this statement, he underwent lengthy police interrogation, the same consuming thirty-two pages in transcription. This questioning was not a simple, "What do you want to say?" such as might have elicited voluntary amplification. Instead, the interrogation was specific and the answers were not volunteered but were given only in response to questions asked. The rule set forth in *People* v. *Jacobson* (1965) 63 Cal.2d 319, 328-329 [46 Cal.Rptr. 515, 405 P.2d 555]; *People* v. *Chaney* (1965) 63 Cal.2d 767, 769-771 [48 Cal.Rptr. 188, 408 P.2d 964]; and *People* v. *Matthews* (1968) 264 Cal.App.2d 557, 565-568 [70 Cal.Rptr. 756] requires us to hold that appellant's admissions were not voluntary in the sense of being spontaneous, and that the *Miranda* rules apply.

II. *Did Appellant Waive His Rights To A Full Admonition?*

At the outset of his in-custody interrogation appellant was told that "At any stage of the proceeding you have a right to remain silent and anything you tell us could be used against you in a later proceeding. . . ." He was also asked, "Do you know that you have a right to an attorney?" and he responded, "Yes." The rest of the admonition is quoted as follows:

"Q. Have you made a call for an attorney?

"A. No, I haven't.

"Q. Do you wish to make a call?

"A. Tomorrow, I guess."

The *Miranda* decision requires giving not only the admonition appellant received, but the added notification that if he

could not afford an attorney one would be furnished to him. In his affidavit supporting his motion filed in the superior court, appellant claimed he had less than one dollar at the time he was interrogated and knew that if he were to employ a lawyer he would have to pay him, or arrange to do so. He stated that had he known a lawyer would be provided for him because of his indigence, he believes he would have talked with one before making any statement to the police.

The wealth or poverty of a person is not pertinent vis-a-vis his constitutional right to the full *Miranda* admonition. Hence, we are concerned only with appellant's statement at the outset of his interrogation that he thought he would call his attorney ''Tomorrow, I guess.'' Could a trial court justifiably conclude from this that appellant intended to waive his right to the advice of counsel, whether to be employed by him or furnished to him if indigent? We think not. ■ One can waive only that of which he is aware and cannot waive that of which he is ignorant. *People* v. *Dorado, supra,* states the waiver rule thus (p. 352) : ''[5] In the absence of evidence that defendant already knew he had a right to counsel during interrogation, the failure of the officers to inform him of that right precludes a finding that he knowingly waived it.'' And (p. 353) : ''[6] Obviously, defendant could not waive the right to remain silent unless he knew of that right. [7] As the court in *Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146, 150 [314 P.2d 164], said in discussing the privilege against self-incrimination, 'The defendant . . . cannot be charged with a waiver of the privilege unless it appears that he was aware of its existence and its surrounding safeguards and voluntarily and intelligently elected to refrain from asserting it.' ''

■ Since appellant was not so informed, and the record does not disclose any prior knowledge of a right to have counsel furnished to him, he could not be held to have waived that right. Based solely upon the record now before us, we conclude the in-custody admissions would not have been admissible in evidence against appellant had his case gone to trial.

■ The remaining problem, therefore, is to determine if appellant has made such a sufficient showing as to require that the judgment be set aside and that he be entitled to withdraw his ''guilty'' plea.

III. *Should a Writ of Habeas Corpus Issue From This Court?*

Appellant filed with the superior court a Motion To Set

Aside Judgment and To Withdraw Plea Of Guilty. The motion was denied and the order so made is not appealable. (Pen. Code, § 1237; *People* v. *Thomas* (1959) 52 Cal.2d 521, 527 [342 P.2d 889].) Usually such motion is deemed a request for a writ of error *coram nobis*. (*People* v. *Silva* (1965) 232 Cal.App.2d 477, 478 [42 Cal.Rptr. 723]; *People* v. *O'Neal* (1962) 204 Cal.App.2d 707, 709 [22 Cal.Rptr. 641]; Pen. Code, § 1265.) However, it has been held that such a petition is a remedy of narrow scope whose ". . . purpose is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court." *People* v. *Adamson* (1949) 34 Cal.2d 320, 326-327 [210 P.2d 13]. The appellant must show that the *facts* on which he relies were unknown to him and were not reasonably discoverable with due diligence at any time earlier than the time of his petition for *coram nobis*. (*People* v. *Welch* (1964) 61 Cal.2d 786, 790 [40 Cal.Rptr. 238, 394 P.2d 926]; *People* v. *Silva, supra,* p. 479; *People* v. *Ayala* (1955) 138 Cal.App.2d 243, 245-247 [291 P.2d 517].)

As will be seen, appellant's showing in the present case does not meet the above requirements. We therefore treat it, as we may, as a petition for writ of habeas corpus. (*People* v. *Enriquez* (1967) 65 Cal.2d 746, 750 [56 Cal.Rptr. 334, 423 P.2d 262]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 15-17 [9 Cal.Rptr. 607, 357 P.2d 839].) The function of the writ of habeas corpus has been greatly broadened. (*In re Jackson* (1964) 61 Cal.2d 500, 503-505 [39 Cal.Rptr. 220, 393 P.2d 420].) Inasmuch as no appeal lies from denial by the superior court of habeas corpus (Pen. Code, § 1506) we treat this as an original application in this court for the issuance of such writ.

A word should be said about the record before us, which as originally presented consisted of a clerk's transcript and a reporter's transcript of the oral proceedings during appellant's motion. At the oral argument before us, both parties agreed we might treat the matter as an application for habeas corpus and that we could review the reporter's transcript of the preliminary hearing and also review the superior court file (No. 322070 entitled People v. Connor). The foregoing outlines the record now before us.

The motion to set aside the judgment of the lower court was supported by the affidavits of appellant and his trial counsel.

These reflect that appellant surrendered himself to the police on April 6, 1966, and was immediately arrested and booked. His preliminary hearing was on April 22, 1966, followed by an arraignment in the superior court on May 6, 1966. By information filed that date he was charged with the murder of his wife occurring April 6, 1966, a felony in violation of Penal Code, section 187. At the arraignment he pled "not guilty" and "not guilty by reason of insanity." His case was set for trial on July 7, 1966, and on that date he withdrew his pleas and pled "guilty." He had employed as his attorney a lawyer admitted to practice less than a year.

The attorney's affidavit discloses that he had several discussions of the case with representatives of the district attorney before the date set for trial. (We are not informed of the dates of any discussion.) He says, "They alluded to defendant's confession of April 6, 1966, among other things, and told me that the evidence, including the confession, clearly made the case a death penalty case." Because he was convinced defendant had little chance of escaping the death penalty he advised him to plead guilty "in order to obtain a lesser sentence of life imprisonment." (A permissible settlement under Penal Code, section 1192.3; see: *People* v. *Toth* (1964) 224 Cal.App.2d 130, 133 [36 Cal.Rptr. 417].) The attorney's affidavit states he was unaware of the *Miranda* decision at the time he so advised his client and that had he been so aware ". . . . I believe I would not have advised the defendant to plead guilty in the first degree murder, but on the contrary, would have advised him to stand trial . . . ." The attorney was not able to state when, following this plea, he first learned of *Miranda*.

According to his own affidavit, appellant relied on the advice of his attorney and pled guilty to first degree murder following which he was sentenced to life imprisonment. He had no direct contact with the prosecution and it is not claimed he was promised immunity, a lighter sentence or was otherwise coerced by the prosecution into entering a guilty plea (such as mentioned in *People* v. *Gilbert* (1944) 25 Cal.2d 422, 442-443 [154 P.2d 657]). There likewise is nothing to indicate appellant's attorney relayed to him any such promise or other coercive statement purportedly made by the prosecution.

Appellant's affidavit states his own ignorance of *Miranda* until June 29, 1967, when he learned of that decision from present counsel. There is sufficient additional showing in the

affidavits to support a finding that appellant was diligent in pursuing his present request. We therefore get to the nub of the matter: is an accused entitled to the issuance of habeas corpus where he pled guilty upon the advice of his personal attorney, which advice is now claimed to be bad advice because given in ignorance of then new law?

Appellant admits the absence of the coercive elements discussed in *People* v. *Gilbert, supra,* wherein also appears the statement (p. 443) ". . . it is true that mere advice or assurances by a private attorney will not vitiate a plea entered in reliance thereon. . . ." (See also: *People* v. *O'Neal* (1962) 204 Cal.App.2d 707, 709 [22 Cal.Rptr. 641] "A plea of guilty, entered on advice of counsel, in the absence of fraud, etc., will not be vacated.") However, appellant contrasts the foregoing with the quotation of a footnote appearing in *People* v. *Spencer* (1967) 66 Cal.2d 158 [57 Cal.Rptr. 163, 424 P.2d 715] wherein it is said (p. 164): "Neither *Seiterle* nor *Enriquez* casts doubt upon the established principle that a guilty plea cannot stand if prompted by fear that an unlawfully obtained confession may be used at trial."

Our review of the entire record discloses that on April 6, 1966, appellant walked into the University Division of the Los Angeles Police Department, handed a revolver to the police officer on duty and stated "I have killed somebody" (or "I just killed someone"). He then handed four empty cartridges and two live rounds of .38 caliber ammunition to the officer, removing the same from a coat pocket. On request that he empty his pockets appellant handed the officer six additional rounds of live ammunition. He told the officer the killing occurred near 30th Street and West Boulevard. A call made to a detective in the Wilshire Division of the Police Department (in whose area this intersection lay) disclosed he was aware of the shooting. University was requested to keep the suspect in custody. A witness testifying at the preliminary hearing said the victim came in the late afternoon to get her two children whom she had left at the witness's home. The victim departed with her children, following which the witness heard a sharp sound, "like a backfire." She ran out and one of the children was screaming that his mother had been shot; "My daddy killed my mother," adding, "There goes Clarence Connor. He shot my mother." The evidence further reflected four shots had been fired. Two shots struck the victim in the head and two struck her in the chest.

Based upon the foregoing evidence, all available to the

police without the admissions of appellant, one could conclude they establish a first degree murder. Appellant obviously had known the deceased was going to pick up the children at the home of her friend and had gone there to wait for her, carrying a pistol with him. Under these circumstances, trial counsel readily could believe that his client should plead guilty to first degree murder in order to receive a prison sentence rather than the death penalty.

In his affidavit, trial counsel states his "belief" that he would not have advised appellant to plead guilty to first degree murder if he had been aware of *Miranda* since, under that decision, appellant's "confession" would not have been admissible against him. We are not bound to accept the opinions of the attorney as to what he probably would have done under circumstances presented over a year before as set forth in his affidavit.[2] Ignorance of the *Miranda* decision may not have been the deciding factor in the light of evidence known to both prosecution and to the defense.[3] Additionally, the *Miranda* decision received such wide publicity, particularly among attorneys, that one may question the accuracy of trial counsel's memory when he professes ignorance of *Miranda* until some time after appellant pled guilty.

Were we to conclude there had been sufficient legal showing to justify issuance of an alternative writ, one speculates how the prosecution could possibly meet an order to show cause in this or any similar case. The prosecution could not controvert the alleged recollection of the affiants or the belief one of them expressed. We would thus place convicted criminals in a position where, without appealing, each could seek the issuance of

---

[2]Judicial discretion is exercised in the issuance of habeas corpus ". . . and such facts must be made to appear to the judge to whom the petition is presented as, in his judgment, prima facie entitle the petitioner to the writ." (39 Am.Jur.2d 269, Habeas Corpus § 129); and " 'While habeas corpus is a writ of right, it will not issue as a matter of course or as a mere perfunctory operation upon the filing of the petition . . . .' " (*In re Rickert* (1964) 124 Vt. 232 [203 A.2d 602, 604]; and see: *Wojculewicz* v. *Cummings* (1956) 143 Conn. 624 [124 A.2d 886, 888-889] and *Ex parte Tail* (1944) 145 Neb. 268 [16 N.W.2d 161, 163].) A mere statement of an opinion is not to be considered. (25 Am.Jur. 248, Habeas Corpus § 151.) An "opinion" is defined as: "2 a: belief stronger than impression and less strong than positive knowledge . . . a belief or view based on interpretation of observed facts and experience. . . ." (Webster's Third New Internat. Dict.), and is further defined as: "1. a belief not based on absolute certainty or positive knowledge but on what seems true, valid, or probable to one's own mind, . . . ." (Webster's New World Dict. (College Edition, 1962)).

[3]See: *People* v. *Toth, supra*, pp. 132-133, particularly (p. 132): "Moreover, there is no showing that counsel acted unwisely in recommending a guilty plea."

habeas corpus on the ground that his attorney's ignorance of law at the time of trial induced him to take some action which, in the light of after-acquired knowledge, proved unsound. We believe the rule should be otherwise. While the law is ever aware of the rights of persons wrongfully accused or convicted it must also remain aware of the rights of the public to an orderly and consistent progression in the handling of criminal cases.

The appeal from the order of the superior court is dismissed. The application for a writ of habeas corpus is denied

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied April 2, 1969, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied May 8, 1969.