[Crim. No. 14403. Second Dist., Div. Three. Aug. 6, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT SUNDAY, Defendant and Appellant.

Ronald M. Sohigian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Philip C. Griffin and Brian Amer, Deputy Attorneys General, for Plaintiff and Respondent.

THE COURT.—This court filed an opinion in this case on April 10, 1969. Thereafter appellant filed a petition for a rehearing. Appellant's petition for a rehearing was granted on May 9, 1969. Upon further consideration the following determination of the appeal is made.

Defendant was charged with robbery while armed with a deadly weapon in violation of section 211 of the Penal Code (count I) and assault with a deadly weapon with intent to commit murder in violation of section 217 of the Penal Code (count II). By amended information he was also charged with four prior convictions, all of which were stricken prior to trial. Before trial his case was severed from that of a codefendant, Stanley Miner. Defendant was convicted by a jury as charged and sentenced to state prison on each count, the sentence as to count II to be stayed until satisfaction of the sentence on count I, at which time the stay was to become permanent.

Defendant raises two contentions: (1) the trial court com-

mitted prejudicial error in ruling that the prior convictions could be used to impeach defendant because the prosecution had not sustained its burden with respect to showing that in those convictions defendant had been represented by counsel; (2) the court erred in admitting into evidence tape recordings containing incriminating statements made by defendant in an interview with police officers.

The crime occurred shortly after midnight on May 15, 1967. At about 11 p.m. on May 14 the victim, James Ramos, met defendant and Miner at a bar and entered into casual conversation with them. Ramos, who had about $50 in currency on his person, bought the two men several drinks. After approximately an hour's discussion in two bars, the men agreed to leave for Mexico, where Ramos had mentioned he was going in order to visit his wife. Saying he wanted to pack a suitcase, Miner drove the others in his pickup truck to a location on 12th Place. A few seconds after defendant had alighted, as Ramos began to follow him, Ramos suddenly saw a "big flash" and felt a "big blast" in his face, as if "somebody had exploded a giant firecracker." He did not see defendant with a gun, but he was certain that it was defendant who shot him. Although he remained conscious, he pretended to be dead while a man whom he believed to be defendant searched his body. Ramos heard the same man say, "I'm going to hit him again" and "Is this all he's got?" and "I thought he had a money belt." Miner then said, "Let's go, the guy's dead," and Ramos heard the truck drive off, running over his left hand as it left. The two men took most of the belongings Ramos had on his person, including $35-$40 in paper currency and $6-$7 in change. Ramos managed to get to a nearby hotel and summon aid; he had suffered a bullet wound through the side of his head and a large scratch on his back.

A revolver was received in evidence as People's exhibit 4. It was identified by B. H. Nunnelee as the one which he had kept at his restaurant and left on the counter when he closed up each day. Defendant, who stayed with Nunnelee each night to close the restaurant, had seen the gun on the counter several times and was one of no more than five people who knew where it was kept. The gun had been stolen the morning of May 14, 1967. Two employees of the restaurant testified that several times prior to the robbery defendant had inquired about the possibility of obtaining a gun and had promised each a percentage of the "action" if he could acquire one. One of the employees said that about a week or 10 days

before the robbery defendant had asked to borrow Nunnelee's gun, but the employee had believed at the time that defendant was joking. The revolver was also identified by a gas station operator as one which he had purchased from Miner on approximately May 22, 1967.

*The Prior Convictions.*

Defendant contends that the trial court committed prejudicial error in denying, in part, his motion to strike from the information the allegation of four prior felony convictions. The motion, which was made before trial, was based on defendant's claim that there was no showing that he had been represented by counsel in the prior proceedings. The court overruled the motion for purposes of impeaching defendant, indicating that any objection to use of the convictions during trial would be rejected. This ruling, argues defendant, prejudiced his case in that it persuaded his counsel not to call him as a witness.

Defendant's argument that the trial court erred in its ruling because the prosecution failed to prove that defendant had been represented by counsel must be rejected. As *People v. Coffey,* 67 Cal.2d 204, 217-218 [60 Cal.Rptr. 457, 430 P.2d 15], points out, the burden of proof lies with defendant to show that he was not represented. Since defendant produced no evidence to this effect, the trial court could properly rule that the convictions were admissible.

Nevertheless, as defendant points out, the court failed to adhere strictly to the procedures outlined in *Coffey.* The court in that case held that in the course of a pretrial hearing to determine the constitutional validity of prior convictions "the prosecution shall first have the burden of producing evidence of the prior conviction sufficient to justify a finding that defendant 'has suffered such previous conviction.' [Citation.] . . . [After] this prima facie showing has been made, the defendant shall thereupon have the burden of producing evidence that his constitutional right to counsel was infringed in the prior proceeding at issue." (67 Cal.2d at p. 217.) Since there was here no evidence at all regarding the existence of the prior convictions, the requirements of *Coffey* were not satisfied.

We disagree, however, with defendant's claim that this error is reversible. During the hearing on the convictions defendant did not object to the prosecution's failure to prove

that he had been convicted. He objected only to the method by which the prosecution offered to prove that defendant had been represented by counsel; he did not challenge and indeed seemed at that time to assume the existence of those convictions. His failure to interpose a timely objection prevented the prosecution from remedying an error readily curable at the trial level and, under these, circumstances, defendant waived his right to insist that the *Coffey* procedure be followed.

Moreover, defendant was not prejudiced by the failure of the trial court to require the prosecution to make a prima facie showing that the prior convictions existed at the time the court denied defendant's motion to strike the allegation of those convictions. At the trial he could have required the prosecution to make such showing by taking the witness stand and challenging any attempted impeachment based upon the existence of those convictions. Since defendant could thus at any time have required the prosecution to meet the only burden under *Coffey* which it had not yet met, the failure to produce the necessary proof before trial could not have been a factor in his counsel's decision to keep him off the stand.

*The Use of the Tape Recording.*

Defendant claims that his constitutional rights under *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] were violated by the admission into evidence of a tape recording of an interview with police during which he made self-incriminating statements. The court specifically found after a *voir dire* examination of defendant and the arresting officer that the statements were made voluntarily and that defendant's rights under *Miranda* had been adequately safeguarded.

Although the evidence as to the events which occurred between the arrest and the interview was to a certain degree conflicting, we must accept the version favoring the People, who prevailed below, to the extent that that version is supported by the record. Viewed under that standard the record shows that defendant was arrested on May 22, 1967, at 3 p.m., that he was at that time advised by Sergeant Lloyd Neal of his rights under *Miranda,* and that he then requested a lawyer and indicated his desire to remain silent. On the way to the police station Sergeant Neal asked defendant no questions other than where he lived. The next point of contact between defendant and Sergeant Neal occurred at 7:30 p.m. the same day, when the officer summoned defendant from his

cell in order to have him observe Miner make a statement. The officer did not talk to defendant then; defendant made two remarks, one to the effect that he wanted to consult an attorney and the other to the effect that Miner was innocent. At approximately 8 p.m., defendant requested a jailor to summon Sergeant Neal so that he could speak with him. Defendant was taken to an interrogation room. There he asked Sergeant Neal to bring in Miner and indicated his willingness to have a stenographer present. Sergeant Neal repeated the *Miranda* warnings; without again asking for an attorney, defendant proceeded to make a statement.

 The parties stipulated at trial that, if defendant were called to testify, he would claim that he had not eaten for two days prior to the statement. In the absence of any indication that the police knew of defendant's condition and attempted to take advantage of it, however, this fact could not be the basis for a claim that the Fifth Amendment was violated and could only affect the weight to be attached to the statement by the trier of fact.

Defendant contends that his statements were inadmissible because he had previously expressed a desire to remain silent and to have the services of an attorney. In support of this contention he relies upon the holdings in *People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625], and *People* v. *Ireland,* 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580]. Those cases, as well as *People* v. *Hamilton,* 268 Cal.App.2d 393 [74 Cal.Rptr. 29], declared inadmissible incriminating statements made by a defendant during custodial interrogation initiated by police after the defendant had invoked his right to silence or counsel. The decisions were based upon the directive in *Miranda* requiring the discontinuance of interrogation upon an assertion of rights and creating an irrebutable presumption that any statement made during subsequent police-initiated interrogation was the product of coercion rather than of unpressured, intelligent choice. (384 U.S. at pp. 473-474 [16 L.Ed.2d at pp. 722-723].) Two issues are raised by defendant's argument: (1) whether the police were entitled to interview defendant at all and (2) if they were, whether they were entitled to interrogate defendant during it.

*(1) Whether Police Were Entitled to Interview Defendant at all.*

 The fact that a defendant has invoked his right to silence or counsel is, as defendant argues, sufficient to require

the complete shutdown of any interrogation, persuasions, or other operations which might have the effect of pressuring him to change his mind. (*Miranda* v. *Arizona, supra,* 384 U.S. 436; *People* v. *Ireland, supra,* 70 Cal.2d 522; *People* v. *Fioritto, supra,* 68 Cal.2d 714; *People* v. *Milton,* 270 Cal.App.2d 408 [75 Cal.Rptr. 803].) Such an invocation of rights does not, however, preclude a defendant from changing his mind on his own initiative and volunteering to speak, nor does it prohibit the police from accepting and using statements made thereafter. (*People* v. *Smith,* 270 Cal.App.2d 715, 720-725 [76 Cal.Rptr. 53]; *People* v. *Tomita,* 260 Cal.App.2d 88, 92 [66 Cal.Rptr. 739]; see *People* v. *Hill,* 66 Cal.2d 536, 553 [58 Cal.Rptr. 340, 426 P.2d 908]; see also *Miranda* v. *Arizona, supra,* 384 U.S. at p. 478 [16 L.Ed.2d at p. 725] ["Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"]; *People* v. *Ireland, supra,* 70 Cal.2d at p. 536; *People* v. *Fioritto, supra,* 68 Cal.2d at pp. 719-720.)

 Under the version of the facts binding upon us, we find that defendant's offer to make a statement was wholly volunteered and not at all the product of police pressures. Sergeant Neal at no time prior to the offer, either before or after defendant asserted his rights, asked more than routine questions, such as defendant's address. Further, defendant was in his cell, unattended by interrogators, when on his own initiative and without police solicitation he summoned Sergeant Neal because, as defendant testified, "I just wanted to say something." The only point, apparently, at which police were present and thus at which coercion could have been applied was when defendant was taken by police to observe Miner's statement. The conversation then was limited to defendant's own remarks, "He's [Miner's] innocent" and "I want to talk to an attorney."

Such an encounter cannot be construed as an *impermissible* attempt to induce a change of mind. The entire thrust of the *Miranda* policy is to ensure that a defendant's decision to confess or not is based upon a free and intelligent appraisal of his position. This appraisal may be better made if the defendant is aware of the nature and extent of evidence or information in the possession of the police. It is proper, therefore, for the police to show the defendant any such evidence, including the confession of a codefendant, provided that the evidence was obtained legally and that the showing of it is not

accompanied by comments, suggestions, or requests for a statement. (See *People* v. *Hill, supra,* 66 Cal.2d 536; *People* v. *Schwartzman,* 266 Cal.App.2d 870, 885 [72 Cal.Rptr. 616]; *People* v. *Lantz,* 265 Cal.App.2d 5, 8, fn. 4 [71 Cal.Rptr. 188]; *People* v. *Hunter,* 252 Cal.App.2d 472, 478 [60 Cal. Rptr. 563]; see also *Cox* v. *United States* (8th Cir. 1967) 373 F.2d 500. Cf. *People* v. *Fioritto, supra,* 68 Cal.2d 714 [demonstration of codefendants' confessions was accompanied by renewed queries].) ▮▮▮ Thus there is no indication in the record that defendant's decision to confess was other than the product of his own volition, uninfluenced by police coercion, either overt or subtle.

(*2*) *Whether the Police Were Entitled to Interrogate Defendant During the Interview.*

▮▮▮ The next argument proferred by defendant is that, even if the holding of the interview was permissible because defendant himself volunteered to speak, nevertheless the interview was improperly conducted because during it Sergeant Neal interrogated defendant. His original assertion of rights, he claims, permanently insulated him from subsequent interrogation and precluded the use of any elicited statements.

The deputy attorney general assigned to the case on appeal has informed this court by letter of March 10, 1969, that the tape recording of the interview has been misplaced by the officials of the superior court charged with custody of trial exhibits. Since, however, defendant's trial counsel did not raise any objections as to what occurred during the interview and since defendant's contention on appeal concerns solely the fact of questioning, we need not consider whether any particular question or line of questioning was improper. The only issue raised thus being answerable without reference to the tape, our decision is not affected by the unavailability of this evidence.

▮▮▮ We disagree with defendant's contention that an original invocation of rights requires permanent application of the no-interrogation rule regardless of any intervening act by the defendant. The rule explicitly affords insulation, not from an interrogation conducted *after* a defendant has himself changed his mind, but instead from an interrogation conducted *in order* to change his mind.

It has been interpreted only in the latter sense. In *People* v. *Ireland, supra,* 70 Cal.2d 522, foɪ example, the defendant's

482

change of mind was influenced by an officer's question as to whether he would talk, as well as by a continuous police presence and an unceasing investigation, each step of which was paced and controlled by the police according to their own needs and intentions. In *People* v. *Fioritto, supra,* 68 Cal.2d 714, likewise, defendant's offer to confess was made pursuant to police initiative, an inquiry by an investigating officer. (See also *People* v. *Milton, supra,* 270 Cal.App.2d 408 [police on their own initiative renewed inquiries as to whether defendant wanted to talk]; *People* v. *Hamilton, supra,* 268 Cal. App.2d 393 [comments by officer after assertion of rights].)

 Further, we find no compelling policy grounds for adopting defendant's construction. The purpose behind the no-interrogation rule is to prevent a defendant's decision to confess from being influenced by the police. Once the defendant has made a completely independent choice to confess, however, as defendant did here, there is no apparent reason why the strict application of the *Miranda* rules requiring warnings and a knowing waiver should be considered an inadequate shield against coercion. We hold, therefore, that after defendant volunteered to make a statement the police were entitled to interrogate him to the same extent as if he had initially so volunteered without having invoked his rights. Finally, the *Miranda* preconditions for interrogation were met here since defendant was given complete, contemporaneous warnings of his constitutional rights (cf. *People* v. *White,* 69 Cal.2d 751 [72 Cal.Rptr. 873, 446 P.2d 993] [no warnings]; *People* v. *Connor,* 270 Cal.App.2d 630 [75 Cal. Rptr. 905] [inadequate warnings]; *People* v. *Matthews,* 264 Cal.App.2d 557 [70 Cal.Rptr. 756] [inadequate warnings]) and thereafter knowingly waived those rights by electing to proceed (see *People* v. *Johnson,* 70 Cal.2d 541, 556-558 [75 Cal.Rptr. 401, 450 P.2d 865]).

The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied October 1, 1969. Peters, J., was of the opinion that the petition should be granted.