[Crim. No. 3310.    Fourth Dist., Div. Two.    Jan. 23, 1969.]·

THE PEOPLE, Plaintiff and Respondent, v. FRANCISCO H. DURAN, Defendant and Appellant.

Ralph I. Callen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas E. Warriner, Deputy Attorney General, for Plaintiff and Respondent.

FOGG, J. pro tem.*—The information filed herein charged defendant with burglary (Pen. Code, § 459) and alleged two prior convictions of a felony. Defendant pleaded not guilty and not guilty by reason of insanity.

At the time of trial defendant admitted both prior convictions, and withdrew his plea of not guilty by reason of insanity. He was found guilty by the jury of second degree bur-

*Assigned by the Chairman of the Judicial Council.

glary. After denial of his motion for new trial, probation was denied, and defendant was sentenced to state prison for the term prescribed by law, to run concurrently with any other sentence he was under obligation to serve. This appeal is from the judgment of conviction.

The facts of this case may be summarized as follows:

On November 8, 1967, Arthur Gaetaniello, a police officer for the Fullerton Police Department received a report that an alarm had been activated in the Orange County Pawn Shop. When the officer arrived he heard noises within the building, and radioed for additional units. When additional officers arrived, Officer Gaetaniello climbed onto the roof to investigate. Officer Gaetaniello heard a whistle blow, and another officer yelled, ''He's hanging in the roof.'' Officer Gaetaniello then observed, through the vent opening on the roof, defendant hanging from a ledge in the ceiling.

Defendant was helped from the opening in the roof by Officer Gaetaniello and another officer. While Officer Gaetaniello was waiting for the other officer to come up and help him remove defendant, defendant advised Officer Gaetaniello that he had better advise defendant of his ''rights'' at this time or the case would be lost in court. The officer then advised defendant of his ''rights.'' This occurred about 2:40 a.m. Defendant's eyes seemed normal and he did not stagger when walking.

Sergeant Joseph Harberth of the Fullerton Police Department looked through the window of the Orange County Pawn Shop and observed defendant standing partially on a suspended light fixture. After defendant was removed from the pawn shop, Sergeant Harberth noticed an odor of alcohol about defendant. Defendant appeared, however, to be rational and was completely coherent. Sergeant Harberth had arrested persons in the past for being drunk. It did not appear to Sergeant Harberth that defendant was affected in his motor movements by his drinking.

It was stipulated that Victor L. Pahl would testify to the following: He was the owner of the Orange County Pawn Shop. On November 7, 1967, he secured his business when he left work that evening. At that time the wooden cover of the roof vent was secure in place. Mr. Pahl did not know defendant and did not give defendant permission to enter his premises.

Detective Schauperl interviewed defendant at 11:15 a.m. on-

November 8, 1967. At that time defendant was advised of his constitutional rights as follows:

"You have the absolute right to remain silent. Anything you say can and will be used as evidence against you in court. You have the right to consult with an attorney, to be represented by an attorney and to have an attorney present before any questions are asked.

"If you cannot afford an attorney, one will be appointed by the court free of charge to represent you before any questioning, if you so desire."

When asked if he understood these rights, defendant replied, "Yes." Detective Schauperl then asked, "With these rights in mind, are you willing to talk to me about the charges against you?" Defendant then replied, "Actually, there's nothing to discuss, you know, I—— I was loaded." Defendant did not indicate that he wanted an attorney nor did he say that he wanted to remain silent. When the officer asked him further if he wanted to talk about it, his response was "There's—there's no harm in talking about it." Defendant indicated that he was short of money when he entered the pawn shop. He had been walking in the alley to the rear of the pawn shop, when he decided to try and enter one of the businesses. Defendant climbed to the roof and started looking for a way to enter one of the businesses. He checked around and found a vent cover that he could remove. After removing this, he looked down into the pawn shop and saw guitars and other things of value. Defendant climbed through a hole in the roof and onto a light fixture. He got himself into a position where he could neither get down into the shop nor pull himself back out.

Dr. Seawright Anderson testified for defendant that, based upon defendant's statement that he had used benzedrine, defendant was suffering some defect in his perception and judgment, and that to some extent his capacity to reason had been diminished.

During cross-examination, Dr. Anderson testified that defendant was not suffering from some abnormal mental condition at the time of the crime, and that defendant was capable of forming a specific intent to steal. No other evidence was presented in behalf of defendant.

Defendant makes three contentions upon appeal: (1) The defendant's statements were improperly admitted in evidence since he did not knowingly and intelligently waive his privilege against self-incrimination and his right to counsel; (2)

the trial court erred in refusing to grant a mistrial after the psychiatrist, called by the prosecution out of order, referred upon cross-examination to defendant's prior conviction for burglary; and (3) the trial court erred in refusing to give defendant's requested instruction on corpus delicti.

## I.

■ Whether an accused waived his rights to counsel and to remain silent before making a statement to investigating officers is primarily a question for the trial judge, and his determination thereon should not be disturbed by a reviewing court unless it is palpably erroneous. (*People* v. *Sosa*, 251 Cal.App.2d 9, 17 [58 Cal.Rptr. 912].) ■ In the case at bench the trial judge properly overruled the objection of defendant's counsel to Detective Schauperl's testimony concerning defendant's incriminating statements after hearing preliminary evidence which clearly supported a finding that defendant voluntarily, knowingly and intelligently waived his right to remain silent and to be represented by counsel after being given a *Miranda* warning.

■ Defendant also complains that he refused ''twice'' to discuss the matter but the police officers continued talking to him until he finally stated he did not think it would hurt anything if he talked to them. A careful review of the record does not support this interpretation of the evidence. Only Detective Schauperl testified as to the statements made by defendant, and on cross-examination he stated he was aware that defendant had been advised of his rights previously from the arresting officer's report, and defendant had stated then he would rather not talk about it. Certainly this evidence does not indicate that defendant was subjected to such pressure or coercion as is condemned by *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

■ Even though defendant initially declined to discuss the matter with the police, defendant could later waive his constitutional rights according to *People* v. *Hill*, 66 Cal.2d 536 [58 Cal.Rptr. 340, 426 P.2d 908]. The Supreme Court said at p. 553: ''Where the authorities ignore a request for counsel and continue an interrogation, the right of counsel has been denied. (*People* v. *Luker, supra,* 63 Cal.2d 464, 474 [47 Cal. Rptr. 209, 407 P.2d 9].) However, there is no reason why, once having requested counsel and the request having been recognized by a cessation of interrogation, the accused cannot elect to proceed without counsel if that election is freely, knowingly, and intelligently made.''

*Hill,* of course, did not apply *Miranda* because the trial began before the date of the *Miranda* decision.

In *People* v. *Fioritto,* 68 Cal.2d 714, 718-719 [68 Cal.Rptr. 817, 441 P.2d 625], the Supreme Court held that a confession was inadmissible after the defendant had initially refused to waive his constitutional rights, based upon the *Miranda* case. However, we believe this decision is distinguishable. In *Fioritto,* defendant initially refused to waive his right to counsel and confessed only after being confronted with his two juvenile accomplices who had already confessed. This was the ''compulsion, subtle or otherwise'' prohibited by *Miranda.* But in the case at bench, as previously indicated, there was no coercion, pressure, nor compulsion. Also, a lapse of eight or nine hours occurred between defendant's arrest and his interrogation. It cannot be urged, either, that defendant was induced by the police to talk about the case by suggestions of leniency, which would render his waiver ineffective, under *People* v. *Russell,* 259 Cal.App.2d 637, 645-646 [66 Cal.Rptr. 594].

## II.

We are of the opinion that the trial judge did not err in refusing to grant a mistrial after the People's psychiatrist mentioned upon cross-examination that defendant was charged with a prior burglary.

The question asked by defendant's counsel on cross-examination of Dr. Drury who was called out of order by stipulation as a rebuttal witness for the prosecution, and his answer was as follows:

''Q. Would you say that this judgment here included a judgment defect of being able to judge distances?

''A. I don't know. I don't know. He may have thought he could—As I understand the prior burglary with which he was charged, it involved the scaling of a high wall and going down a rather long distance. He may have felt that he could do this in this particular situation. And I'm not sure that he was aware of the distance when he finally arrived at this position on this light. And, of course, he was still there. He may have decided that that was too far.''

It is obvious that all of this answer following, ''I don't know'' was non-responsive and was subject to a motion to strike. (Evid. Code, § 766.) However, counsel for defendant made a motion for a mistrial which was denied by the trial judge.

There also can be no doubt that the allusion by the doctor to

"the prior burglary with which he [the defendant] was charged" was improper under Penal Code, section 1025, which provides in pertinent part as follows: "In case the defendant pleads not guilty, and answers that he has suffered the previous conviction, the charge of the previous conviction must not be read to the jury, *nor alluded to on the trial.*" (Italics added.)

In *People* v. *Stinson,* 214 Cal.App.2d 476 [29 Cal.Rptr. 695], a police officer, testifying for the prosecution, mentioned upon cross-examination that defendant's "parole officer came down and talked to him." It was held that this was an improper allusion to a prior conviction but not reversible error in view of the convincing evidence of guilt. There the trial judge instructed the jury to disregard the improper reference which was also stricken as nonresponsive. The appellate court said at pp. 482-483: "Improper evidence of prior offenses results in reversal only where the appellate court's review of the trial record reveals a closely balanced state of the evidence. [Cases cited.] The same error, viewed in the light of a record which points convincingly to guilt, is consistently regarded as nonprejudicial. [Cases cited.]

"In the present case the trial court promptly instructed the jury to disregard the offending information. A jury admonition to disregard evidence of a prior crime is sometimes mentioned as a factor in reversal or affirmance. The limited value of the admonition is implicitly recognized by the tendency of the courts to give it weight when the evidence of guilt is convincing (*People* v. *Jordan, supra,* 188 Cal.App.2d 456 [10 Cal.Rptr. 495]) and to disregard it when the case is a close one (*People* v. *Bentley, supra,* 131 Cal.App.2d 687 [281 P.2d 1])."

In the case at bench, the judge offered to admonish the jury to disregard the improper statement and order that portion of the doctor's testimony stricken; however, counsel for defendant declined to accept this offer because in his words, "I think it would only emphasize the testimony."

It has been stated by our Supreme Court in *People* v. *Rolon,* 66 Cal.2d 690, 693 [58 Cal.Rptr. 596, 427 P.2d 196], that "An improper reference to a prior conviction may be grounds for reversal in itself [citing cases, including *People* v. *Hudgins* (1943) 59 Cal.App.2d 175 [138 P.2d 311], which is cited in appellant's brief] but is nonprejudicial 'in the light of a record which points convincingly to guilt. . . .' (*People* v. *Stinson* (1963) 214 Cal.App.2d 476, 482 [29 Cal. Rptr. 695].)" In the *Rolon* case, the court reversed the judg-

ment of conviction because of the closely balanced evidence on both sides and the great length of the jury's deliberation in reaching a verdict.

Also, it has been said that "Generally, improper evidence of a past crime does not cause reversal where there is heavy evidence of guilt." (*People* v. *Cabrellis,* 251 Cal.App.2d 681, 688 [59 Cal.Rptr. 795].)

We conclude that the trial court did not err in refusing to grant defendant's motion for a mistrial because of the improper allusion to his prior crime. The evidence, as previously summarized, convincingly pointed to defendant's guilt of burglary, and therefore, the error was nonprejudicial.

### III.

■ Finally, defendant contends that the trial court erred in refusing defendant's requested instruction on corpus delicti (CALJIC 29-C alternate) which reads as follows: "The guilt of a defendant may not be established alone by any confession or admission made by him outside of this trial. Before any person may be convicted of a criminal offense, there must be proof, independent of any such statement, that the crime in question was committed, but it is not necessary that such independent proof include proof as to identity of the person by whom such offense was committed."

It has been held that it is error to fail to give such an instruction even without request. (*People* v. *Howk,* 56 Cal.2d 687, 707 [16 Cal.Rptr. 370, 365 P.2d 426]; *People* v. *Holbrook,* 45 Cal.2d 228, 234 [288 P.2d 1].) Therefore, it follows that to refuse such an instruction when requested by defendant was error. However, after a review of the entire record, we conclude, as did the Supreme Court in *People* v. *Howk, supra,* and *People* v. *Holbrook, supra,* that the error was not prejudicial. The corpus delicti was amply established by the testimony of the police officers and the shop owner as to defendant's unauthorized presence in the Orange County Pawn Broker's building, without reference to defendant's statements. We conclude, therefore, as did the Supreme Court in *People* v. *Holbrook, supra,* that "it is highly improbable that a different verdict would have been reached if the court had given such an instruction."

The judgment is affirmed.

McCabe, P. J., and Kerrigan, J., concurred.