[Crim. No. 14603. Second Dist., Div. Five. Mar. 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES EDWARD BRASHIER, Defendant and Appellant.

Raymond Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gerald H. Genard, Deputy Attorney General, for Plaintiff and Respondent.

REPPY, J.—Defendant was charged with and found guilty by jury verdict of two counts of forgery (Pen. Code, § 470). The proof established that the offenses constituted that aspect of forgery known as "uttering," in this instance the cashing of payroll checks as to which the defendant knew that someone other than the purported maker (president of Lunax Company, a small soap and wax manufacturing company) had filled out the checks and signed the name of the purported maker.

The main contentions of defendant on appeal are that there was insufficient evidence to support the verdict and that a handwriting exemplar (used to prove that defendant indorsed the checks) and certain statements of both an exculpatory and incriminating nature were obtained from defendant at the time he was picked up under a waiver of extradition in Dade County, Florida, despite his claimed assertion to the officer involved (Weiss) that he did not want to make statements until he had consulted an attorney. We have examined the record carefully in these respects, and we are satisfied that the contentions are without foundation.

The main issue on the merits which the jury had to decide was whether or not defendant had knowledge that the Lunax Company payroll checks, which had been given to him by his acquaintance, McDaniels, and which he had passed, had been forged by McDaniels, a parolee and ex-employee of the purported maker. We find substantial evidence of a circumstantial nature supportive of a finding of such knowledge. The jury obviously considered as concocted the story of defendant that McDaniels, who owed him $1,500, persuaded his employer to make out eight payroll checks payable to defendant (instead of his employee) in identical small dollar and odd-cent amounts (so defendant could cash them more easily), and then stole the proceeds from defendant. The very presenting of this story by defendant no doubt, in part, prompted the jury to find that defendant had the necessary guilty knowledge.

The question remains whether a substantial amount of the evidence indicating defendant's knowledge of the forged condition of the checks when he passed them (which was in the form of testimony of Officer Weiss relating what defendant had told him when they were together in Dade County jail and on the airplane returning to California) was inadmissible because obtained after defendant had advised Officer Weiss that he did not want to talk any more until he had seen a lawyer. (*People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625].)[1]

A *voir dire* hearing was conducted in the absence of the jury, with respect to the question of whether advice of constitutional rights was given and, if so, whether there had been a waiver, and if so, when and how. Both Officer Weiss and defendant testified at the session. Their respective versions of the circumstances were not in conflict as to the fact that the "full panoply" (*People* v. *Fioritto, supra*) of constitutional rights was explained and understood, but they were in considerable conflict on the matter of when and to what extent defendant stated to Officer Weiss that he did not want to talk to him further until he had conferred with an attorney. Defendant testified that he had made such a statement several times. It was the province of the trial judge, of course, to resolve these conflicts. By overruling defendant's objection to the admissibility of the conversations on the ground defendant had not waived his right to counsel, it is clear that he accepted the version of the officer and those parts of defendant's story which favored admissibility. Thus, in this review, we presume as true those parts of the record which we feel are supportive of the trial judge's determination. (*People* v. *Bassett,* 69 Cal.2d 122, 137 [70 Cal.Rptr. 193, 443 P.2d 777]; *People* v. *Simpson,* 43 Cal.2d 553, 571 [275 P.2d 31].)

Officer Weiss interviewed defendant at the Dade County jail on one day. He took him into personal custody and accompanied him on the flight to California two days later. Officer Weiss originally testified that, at the jail interview, defendant at no time indicated that he did not wish to speak to him. Later on, however, Officer Weiss testified that in the middle of the conversation defendant said that a friend of his

---

[1] *Fioritto* had not been decided at the time of trial, but *Miranda* had. Since the *Fioritto* doctrine follows logically from the language of *Miranda,* we cannot assume that the trial court did not apply its philosophy to any factual conflict presented by the testimony of Weiss and defendant.

who was in the jail with him and was going to get him an attorney, and that, at another point, after making this comment, defendant said, ''I don't think I should be talking to you.'' Officer Weiss also testified that at no time did defendant say that he wanted an attorney; that ''he never asked to be provided with an attorney at all.'' This is the only testimony of Officer Weiss explaining when and how defendant indicated he did not want to talk further until he had seen an attorney. Thus, it is to be inferred that defendant's ''inclination'' not to talk further was not clear-cut and was not unambiguously expressed. Rather, it was hesitant and tentative. In *Fioritto, supra*, 68 Cal.2d 714, the defendant initially made a positive refusal to waive his constitutional rights. Incidentally, defendant, at one point in the *voir dire* session, testified that he couldn't say that Officer Weiss asked him some questions he felt he didn't want to answer; that he didn't really remember if, when asked some questions by Officer Weiss, he told him that he didn't want to answer until he had an attorney.

Moreover, defendant testified at the *voir dire* session that prior to the time that he told Officer Weiss (as he, defendant, claimed) that he did not wish to say more until he had seen an attorney, he had freely advised Officer Weiss that the indorsement signatures on the back of the checks were his and that he had cashed the checks. Defendant also testified that he wanted to tell Officer Weiss, as he did, that there were eight checks rather than six as Officer Weiss had mentioned. In addition, defendant testified that he, himself, initiated parts of further conversations about the circumstances (apparently referring to the time when defendant and Officer Weiss were together on the airplane coming back to California), and that *without Officer Weiss asking him,* he told him that McDaniels (the party who unlawfully had made out the payroll checks) had owed him a debt; that he had paid the debt with the payroll checks; that after he (defendant) had cashed them, McDaniels had stolen all the money and had skipped town; that he felt McDaniels had ''used him'' to cash the checks for him (McDaniels). Finally, when Weiss was later testifying before the jury he said that defendant initiated a conversation about how he had been apprehended and in the course of that conversation had volunteered that he had felt he was going to get caught before he left Los Angeles (for Detroit) because while he was boarding the train he had seen two men who appeared to him to be detectives.

It is clear that most of the out-of-court statements of the defendant from which guilty knowledge could have been inferred by the jury, about which Officer Weiss testified, were made *before* defendant expressed his hesitant concern over whether he should be talking to Officer Weiss or were made by defendant *on his own initiative* and not in response to questions by Officer Weiss.

The Supreme Court in *Fioritto, supra,* stated:

"In so holding, we prohibit only continued questioning after an individual has *once* asserted his constitutional rights. We do not, of course, disapprove of the use of statements, whether admissions or confessions, voluntarily initiated by a suspect. Such statements have been repeatedly sanctioned in the decisions of this court (see, e.g., *People* v. *Jacobson* [63 Cal.2d 319 (46 Cal.Rptr. 515, 405 P.2d 555)]), and are also expressly authorized in the *Miranda* opinion. . . . Again, in *People* v. *Treloar* [64 Cal.2d 141 (49 Cal.Rptr. 100, 410 P.2d 620)], we distinguish between interrogation by police and initiation of discussion by a defendant. . . . In *People* v. *Tomita* [260 Cal.App.2d 88 (66 Cal.Rptr. 739)] (hearing denied) the defendant was advised of and asserted his constitutional rights. The following morning, the day of his arraignment, the defendant summoned the arresting officer to his cell and voluntarily began a discussion of the events leading to his arrest. The court noted [at p. 92] that the defendant had 'initiated a conversation' and under those circumstances the authorities were not precluded from using the volunteered statements." (68 Cal.2d 714 at pp. 719-720.)

In *People* v. *Ireland,* 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580], the defendant actually requested the officers to "Call my parents for my attorney," which they did not do. Nonetheless he was asked by another officer, whose specialty was interrogation, but who had not heard or been informed of defendant's request, if he were willing to talk to him, and the defendant said that he wanted to talk with someone and asked if the officer was willing to listen. The Supreme Court held that defendant's request manifested a desire to have the assistance of an attorney at the earliest possible moment. However, the court added that in *Fioritto* it had "indicated that even a defendant in *custody* might make statements admissible under *Miranda* if it were shown that such statements were the result of defendant's own initiative and did not arise in a context of custodial *interrogation.*

[Citations]." In our case, accepting, as we must, the premise that the trial judge believed the officer's version of events, the only reference made by defendant to an attorney was to say that a jail friend was going to get him one, and the only statement made by him about not talking further was to say that perhaps he should not be talking to the officer. Finally, defendant himself testified to the effect that he initiated the conversations in the airplane when other statements were made and that they were made without the officer asking him questions. Thus, the defendant-initating and non-law-interrogating aspects stressed in *Ireland* are both present here.

It is true that there were some further statements which Officer Weiss related to the jury, but they were of accumulative effect only (such as defendant having written the addresses on the back of the checks; defendant having received the checks fully made out; defendant having known that McDaniels worked at Lunax; defendant probably having cashed the checks on a certain weekend; defendant having traveled to Detroit and Vermont and then having resided in Florida under the name of Bonnard). It is also true that Officer Weiss testified that when defendant said to him that perhaps he should not be talking to him, he (Officer Weiss) said to defendant, "You don't have to . . . Let me just fill you in with what I have [explaining the charges and court procedure and his knowledge of other checks] . . . Do you want to go ahead talking to me or not." However, it is not clear whether or not the other statements of defendant summarized parenthetically above were induced by this phraseology (which might be contrary to the concept of *Fioritto*) or were also made by defendant on his own initiative. Even if they were so induced, we can say, beyond a reasonable doubt, that the jury would have reached the same verdict on the basis of all the other evidence and that, therefore, there was no prejudice. (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].) ■ Whether there has been a proper recital of rights, an understanding thereof, and a waiver thereof is primarily a question for the trial judge, and his determination should not be disturbed unless it is palpably erroneous. (*People* v. *Duran*, 269 Cal.App.2d 112, 115 [74 Cal.Rptr. 459].) The same rule should apply as to whether, after an indication of a desire not to talk more, further discussion was brought about by renewed police *interrogation* or was initiated by a defendant.

■ The cases of *Gilbert* v. *California*, 388 U.S. 263 [18

L.Ed.2d 1178, 87 S.Ct. 1951], and *People* v. *Graves*, 64 Cal.2d 208 [49 Cal.Rptr. 386, 411 P.2d 114], indicate that in the taking of handwriting exemplars from defendant there was no violation of his constitutional privilege against self-incrimination or right to counsel. *Gilbert* points out that "A mere handwriting exemplar, in contrast to the content of what is written, . . . is an identifying physical characteristic outside . . . [the constitutional] protection"; that "there is minimal risk that the absence of counsel might derogate from . . . [defendant's] right to a fair trial"; that "If . . . an unrepresentative exemplar is taken, this can be . . . corrected through the adversary process at trial. . . ." (Pp. 266-267 [18 L.Ed.2d pp. 1182-1183].) In any event, Officer Weiss testified that the exemplar was taken at Dade County jail and that defendant at the time did not mention anything about an attorney. Thus, this procedure must have taken place before defendant told Officer Weiss (in the middle of the interview) that a jail friend was going to get him an attorney and before defendant queried whether he should be talking to Officer Weiss. Defendant thought the exemplar was given in California, but he testified that he did not say he wanted to call an attorney; that Officer Weiss kept asking him over and over if he wanted one. Thus, again, this must have been at the outset of the Dade County jail interview when Officer Weiss advised defendant of his rights, both orally and in writing. It is clear the exemplar was taken when defendant initially had waived his right to counsel for the purposes of that part of the interview.

Less significant points urged by defendant have been reviewed and found to have no merit. Illegality of arrest was never raised at trial and there is nothing in the record pointing to such a factor. On the contrary, the testimony of both Officer Weiss and defendant indicates that the arrest was made pursuant to extradition papers which would be presumed to be valid. Defendant, of course, waived extradition. The claim that the jury had to find defendant not guilty under the "two hypotheses" rule fails to take into consideration that the rule applies to the state of the evidence after the fact finder has resolved conflicts and tested credibility. (*People* v. *Treggs*, 171 Cal.App.2d 537, 543 [341 P.2d 342]; *People* v. *Belcher*, 269 Cal.App.2d 215 [74 Cal.Rptr. 602].) The jury received an instruction on the principle. It is apparent that the jury believed the version presented by the prosecution where it conflicted with that of defendant and disbelieved

defendant's improbable story; in fact, likely used it to fortify its conclusion on the merits of the charge. Defendant had no right to have his evidence accorded equal weight with other evidence. The essence of a trial by jury is that controversies in the proofs (even though they be between direct and circumstantial evidence) shall be resolved by the jury. The jury in this case made no unreasonable classification by refusing to believe defendant's version of the facts. A denial of equal protection of the laws can exist only if a jury purposely discriminates against a defendant for improper reasons. No such circumstance existed in this case.

The judgment is affirmed. The purported appeal from the order denying motion for new trial is dismissed.

Kaus, P. J., and Aiso, J., concurred.