[Crim. No. 7579.  First Dist., Div. One.  Dec. 23, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK E. BROCKMAN, Defendant and Appellant.

COUNSEL

Marteen J. Miller, Public Defender, and Michael F. O'Donnell, Deputy Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Michael J. Phelan and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOLINARI, P. J.—Defendant appeals from a judgment of conviction, following a trial by the court, of murder in the first degree (Pen. Code, § 187) and kidnaping (Pen. Code, § 207), and from an order denying his motion for a new trial.[1] The sole contention is that the trial court improperly admitted an incriminating tape-recorded statement given by defendant.

---

[1] The order denying the motion for new trial is not appealable but may be reviewed on the appeal from the judgment. (Pen. Code, §§ 1237, 1259.)

The facts pertinent to our inquiry are as follows: On February 10, 1968, Inspector Walter Gesek of the Santa Rosa Police Department, who had been working on a case involving the homicide of Charles Kaufman and the kidnaping of Glenna Foote on October 7, 1967, went to defendant's home at about 10 a.m. He was accompanied by Officer Roger McDermott. Defendant's wife answered the door and told Gesek that defendant was in bed. Gesek, who had known defendant for approximately 15 years, awakened defendant and informed him that he was being arrested for murder. Officer McDermott gave defendant the *Miranda* warning[2] by reading it from a card. Both Gesek and McDermott asked defendant if he understood these rights and he responded in the affirmative. McDermott then asked defendant if, having these rights in mind, he wished to make a statement without an attorney present. Defendant replied "Give me a minute." Defendant then dressed and was taken to the office of Police Chief Flohr.

Upon entering the chief's office, Flohr asked defendant, in the presence of Gesek, if he understood his rights and defendant replied that he had been advised of his rights. The chief then told defendant that he had knowledge of the incidents leading up to Kaufman's murder and that they had information that defendant and three other persons were involved. During this conversation, which took from 15 to 20 minutes, defendant stated on several occasions that he didn't care to discuss the matter. When Gesek was queried as to whether, during this conversation, Chief Flohr made the statement to defendant, "Look out that someone doesn't put the gun in your hand," Gesek replied, "Seems to me there was something said like that."

As defendant was being escorted from the chief's office to the county jail, he made the following statement to Gesek: "Walt, give me a couple of days and I'll make a statement."[3] Two days later defendant was taken to the district attorney's office. Present were Assistant District Attorney Hyland, Gesek, Flohr, police Captain Spaulding, and district attorney investigator Bach. After introducing the persons present, Hyland stated: "Now, uh, you've been warned before about your rights, isn't that correct?" Defendant replied, "Yes, I have." Hyland then told defendant that "we've

---

[2] The *Miranda* rule finds its genesis in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], which requires that an accused be advised prior to his being questioned that he has a right to remain silent, that any of his statements may be used against him, and that he has the right to the presence of an attorney, either retained or appointed. (See pp. 444, 477, 479 [16 L.Ed.2d at pp. 706, 725, 726].)

[3] On cross-examination Gesek stated that he left his home telephone number with the jailer in case defendant wanted to talk to him. The record is silent as to whether defendant made use of this number.

got the whole story on this murder. And we want to know if you want to talk about it at all." Defendant replied: "Now why do you say you have the whole thing or not, about the murder and all that?" Hyland then told Brockman what he knew, and Flohr interjected his knowledge of certain incidents, including statements made by other participants. During this colloquy, which from time to time included questions interposed by defendant to Hyland, defendant made admissions and other incriminating statements. At the close of the interrogation defendant was advised that he did not have to make any statement unless he wanted to and was asked if he had been advised of his rights at the time of his arrest, if he understood those rights, and if the statement he had given was voluntary. Defendant replied in the affirmative.

Adverting to the question presented we note, initially, that defendant concedes that a proper *Miranda* warning was given when he was arrested on February 10, 1968. ▮▮▮ His first contention is that he was deprived of his *Miranda* rights when he was not given the *Miranda* warning before the subsequent interrogations by Chief Flohr and Assistant District Attorney Hyland. With respect to this contention, we observe that Flohr did not interrogate defendant but merely made certain statements concerning Flohr's knowledge of the case and admonished defendant that someone might put the gun in his hand. ▮▮▮ In any event, a *Miranda* warning is not required before each meeting of a defendant and the police which is determined to be a "custodial interrogation," but one warning of the *Miranda* rights adequately given is sufficient for subsequent interrogations. (*People* v. *Johnson,* 70 Cal.2d 469, 476 [74 Cal.Rptr. 889, 450 P.2d 265]; *People* v. *Sievers,* 255 Cal.App.2d 34, 38 [62 Cal.Rptr. 841]; and see *People* v. *Johnson,* 70 Cal.2d 541, 558 [75 Cal.Rptr. 401, 450 P.2d 865]; contra, see *People* v. *Matthews,* 264 Cal.App.2d 557, 569 [70 Cal.Rptr. 756].) The determination, in each case, is whether the *Miranda* warning sufficiently informs a defendant of his constitutional rights so that he has an understanding of these rights during subsequent interrogations. (*People* v. *Johnson, supra,* at p. 558.)

▮▮▮ In the instant case, as pointed out above, it is conceded that defendant, at the time of his arrest, was sufficiently informed of his *Miranda* rights. It is clear that he understood these rights when, in response to Chief Flohr's inquiry as to whether he understood his constitutional rights, he stated he had been advised of them. That he understood his rights is further made apparent by the fact that he also informed Flohr that he did not care to discuss the matter. ▮▮▮ The use of the privilege against

self-incrimination, preceded by a clear showing that defendant has been informed of his rights, indicates that he understands those rights. (*People* v. *Johnson, supra,* 70 Cal.2d 541, 558.)

When defendant indicated to Flohr that he did not care to discuss the matter he exercised his Fifth Amendment privilege and thereupon the law enforcement officers were required to cease any interrogation of defendant. (*Miranda* v. *Arizona, supra,* 384 U.S. at pp. 473-474 [16 L.Ed.2d at pp. 722-723]; *People* v. *Fioritto,* 68 Cal.2d 714, 718 [68 Cal.Rptr. 817, 441 P.2d 625]; *People* v. *Ireland,* 70 Cal.2d 522, 535-536 [75 Cal.Rptr. 188, 450 P.2d 580].) This principle is based upon the rationale that police are to be prevented "from wearing down a prisoner's resistance by repeated pressuring until he finally makes the statement desired in order to get peace." (*People* v. *Milton,* 270 Cal.App.2d 408, 415 [75 Cal.Rptr. 803].)

■ Although *Miranda* prohibits continued questioning *once* an individual has asserted his constitutional rights, it does not prohibit subsequent admissions or confessions which are voluntarily initiated by the suspect. (*People* v. *Fioritto, supra,* 68 Cal.2d 714, 719.) Accordingly, where the prisoner or suspect initiates the subsequent interview, evidencing a change of mind not affected by official action, there may be an admissible confession or admission. (*People* v. *Fioritto, supra; People* v. *Lara,* 67 Cal.2d 365, 392 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Milton, supra,* 270 Cal. App.2d 408, 415-416; *People* v. *Duran,* 269 Cal.App.2d 112, 116-117 [74 Cal.Rptr. 459]; *People* v. *Brashier,* 271 Cal.App.2d 298, 303 [76 Cal.Rptr. 581]; *People* v. *Chambers,* 276 Cal.App.2d 89, 106 [80 Cal. Rptr. 672].) The inquiry, in each instance, therefore, is whether the further discussion was brought about by renewed police interrogation or was initiated by the suspect. (*People* v. *Fioritto, supra; People* v. *Brashier, supra,* at p. 304.)

■ When the suspect initiates the subsequent interview after having previously asserted his *Miranda* rights, a voluntary statement, knowingly and intelligently made, constitutes a waiver of constitutional rights. (*People* v. *Hill,* 66 Cal.2d 536, 553 [58 Cal.Rptr. 340]; *People* v. *Fioritto, supra,* 68 Cal.2d 714, 719; *People* v. *Lara, supra,* 67 Cal.2d 365, 392; *People*

v. *Duran, supra,* 269 Cal.App.2d 112, 117; see *People* v. *Johnson, supra,* 70 Cal.2d 541, 558.) ██ In determining whether there has been a waiver of constitutional rights, the issue must be resolved on the whole record (*People* v. *Lara, supra,* at p. 376; *People* v. *Johnson, supra,* 70 Cal.2d 469, 476; *People* v. *Lantz,* 265 Cal.App.2d 5 [71 Cal.Rptr. 188]), and its resolution must depend upon the particular facts and circumstances surrounding the case under consideration, including the background, experience, and conduct of the accused. (*People* v. *Johnson, supra,* at p. 476.) The attendant facts must, therefore, show clearly and convincingly that the accused did relinquish his rights knowingly, intelligently and voluntarily (*People* v. *Johnson, supra,* 70 Cal.2d 541, 558), and the burden of making such a showing is upon the prosecution. (*People* v. *Rodriguez,* 256 Cal.App.2d 663, 668 [64 Cal.Rptr. 253]; *People* v. *Hildabrandt,* 244 Cal.App.2d 423, 430 [53 Cal.Rptr. 99]; see *People* v. *Lara, supra,* 67 Cal.2d 365, 391.) ██ Procedurally, the determination of this issue is primarily a question for the trial judge, and his determination will not be disturbed by an appellate court unless, in the light of the applicable principles, it is palpably erroneous. (*People* v. *Stafford,* 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598]; *People* v. *Sosa,* 251 Cal.App.2d 9, 17 [58 Cal. Rptr. 912]; *People* v. *Duran, supra,* 269 Cal.App.2d 112, 116; *People* v. *Inman,* 274 Cal.App.2d 704, 708 [79 Cal.Rptr. 290].) In *Brashier, supra,* the appellate court in discussing this last mentioned rule states that it "should apply as to whether, after an indication of a desire not to talk more, further discussion was brought about by renewed police *interrogation* or was initiated by a defendant." (271 Cal.App.2d at p. 304.)

In *Duran, supra,* the defendant initially refused to discuss the case with police. Eight or nine hours later he was again interviewed by a detective who advised him of his *Miranda* rights. The defendant did not indicate that he wanted an attorney nor did he say that he wanted to remain silent. When the officer asked him if he wanted to talk about it the defendant stated "there's no harm in talking about it." The trial court admitted the incriminating statements made by the defendant following a *voir dire* hearing in which only the officer testified. The reviewing court upheld the trial judge's determination that the election to discuss the case with the police was

freely, knowingly and intelligently made, upon the rationale that there was no evidence of coercion, pressure, compulsion or any suggestion of leniency. (269 Cal.App.2d at p. 117.)

Similarly, in *Chambers, supra,* all interrogations ceased when the defendant requested counsel. He had a conversation with his attorney on the same day. Two days later he was brought in the interrogation room at the request of his codefendant who stated, in the defendant's presence, that he wanted to confess. The defendant, after again being advised of his constitutional rights, stated he understood them, that he had seen his attorney, and now wanted to discuss the case. In holding that there was a waiver of the defendant's *Miranda* rights the appellate court placed emphasis on the fact that he was not brought into the interrogation room at the instance of the police and that there was no coercion or compulsion. (276 Cal.App.2d 89, 106.)

In *Brashier, supra,* the defendant was advised of his constitutional rights and he indicated he understood them. A police interview then ensued and in the middle of the conversation the defendant said "I don't think I should be talking to you," but he did not say that he wanted an attorney. Upon conflicting evidence the trial court admitted the defendant's statements. The reviewing court, in upholding the trial judge's determination, observed that the defendant's "inclination" not to talk further was ambiguously expressed and not clear-cut, but hesitant and tentative. Moreover, the court noted that the statements made by the defendant after he had expressed his hesitant concern over whether he should be talking to the officer were made by the defendant on his own initiative and not in response to questions by the officer. (271 Cal.App.2d 298, 301-303.)

The application of the principle of voluntary waiver is illustrated in *People* v. *Smith,* 270 Cal.App.2d 715, 720-725 [76 Cal.Rptr. 53]. There the defendant initially indicated on a questionnaire that she wanted an attorney. The opinion is silent as to how a subsequent interrogation was initiated, but it does indicate that the constitutional warnings and statement of rights were meticulously given and explained. The defendant, having evinced an indecisiveness as to whether she wanted a lawyer prior to making her statement, the police meticulously asked fair questions to resolve her desire. She then freely expressed her desire to change the checkmark on the *Miranda* questionnaire before her, and stated that she wanted to talk

at that time without an attorney present. After hearing the tape of her statement played in court, the defendant took the stand. She testified that her statement was not made under any threats or duress and that the material on the tape was an accurate recording of what transpired at the time the statement was taken. The trial judge admitted the statement and the reviewing court upheld the ruling.

Adverting to the instant case, we observe that after defendant had indicated to Chief Flohr that he did not care to discuss the matter, he stated to Inspector Gesek that in a "couple of days" he would make a statement. From this remark it could be inferred that defendant had a change of mind and that his previous indication that he did not care to discuss the case was not clear-cut but tentative. This offer to make a statement was initiated by defendant himself. Since defendant offered to make a statement the police were entitled to act upon the offer after the elapse of two days. Accordingly, two days later the police were justified, upon the basis of his offer, to inquire if he wanted to make a statement. At that time he indicated that he had been informed of his rights. He did not state that he wanted an attorney, nor did he state that he wanted to remain silent. He thereupon, following his inquiry as to how much the police knew about the murder, proceeded to make the incriminating statements in question. We observe, in this regard, moreover, upon a reading of the record, that defendant's statements to the district attorney do not appear to be grudging answers to leading questions but, rather, statements voluntarily made or answers willingly and freely given to the district attorney's questions. We also note that defendant did not take the stand to refute or explain the facts testified to by the prosecution witnesses concerning the circumstances under which defendant's statements were given, nor did defendant request that he be permitted to testify at a *voir dire* inquiry limiting his testimony to the issue of the voluntariness of his statements.

Upon a consideration of the circumstances attendant the making of the subject statements, the trial court determined that defendant knowingly, intelligently and voluntarily waived his constitutional rights after having received the appropriate warnings. These circumstances included the statement attributed to the chief of police by Inspector Gesek when he testified he was under the impression that the chief had admonished defendant "Look out that someone doesn't put the gun in your hand." When Gesek made this questionable statement neither the prosecutor nor the defense attorney pursued it further. The chief himself was not called to the stand, nor were any of the other officers present questioned about the subject. Assuming that the words were said, the trier of fact could reasonably have inferred that the chief's remarks carried the implication that by cooperating and telling what actually happened defendant might receive more lenient

treatment. However, on the whole record before it, the trial court could just as reasonably draw, as it did, contrary inferences and implications.

In *People* v. *Hill, supra,* 66 Cal.2d 536, after an appropriate police explanation of his constitutional rights, the defendant was nevertheless urged by the police to "help yourself" by testifying. Otherwise there were no threats or force or promise of leniency. The trial court, on the whole record, found an ensuing confession to be voluntary. The Supreme Court found no error, and accepted the determination of the lower court upon the rationale that the record did not disclose that any improper inducements were held out to the defendant. (P. 550.)

In *Hill,* the Supreme Court relied upon *People* v. *Ditson,* 57 Cal.2d 415 [20 Cal.Rptr. 165, 369 P.2d 714] where, prior to securing a confession, the police told the defendant "I'm not telling you I'm going to help you. I'm not promising you anything. I'm telling you, Carlos, help yourself. . . . Don't you see what I'm trying to do for you? . . . I want you to help yourself. I'm not promising anything." (P. 432.) A finding that the confession was voluntary was not disturbed by the reviewing court which noted that, although coercion can be psychological as well as physical, intellectual persuasion, pointing out the benefit to be derived by the defendant if he spoke the truth, is not the equivalent of coercion. (P. 433.)

In the light of *Hill* and *Ditson* an inference of intellectual persuasion could be reasonably drawn from the statement attributed to Flohr, if the trial court in fact believed that he made such a statement, when we consider that there was a total absence of any promise of leniency or reward.

■ Adverting to our function as an appellate court, we are mindful that it is not our province to substitute our conclusions for those of the trial court but, rather, that we must determine whether there has been a clear abuse of discretion on the part of the trial court. In the absence of such abuse of discretion the trial court's conclusions as to the voluntary nature of an admission or confession will not be disturbed. (*People* v. *Sanchez,* 65 Cal.2d 814, 826 [56 Cal.Rptr. 648, 423 P.2d 800]; *People* v. *Lara, supra,* 67 Cal.2d 365, 392; *People* v. *Barreto,* 256 Cal.App.2d 392, 408 [64 Cal.Rptr. 211].) ■ We do not perceive such an abuse of discretion nor can we say that the trial court's determination was "palpably erroneous." In sum, we conclude that this case comes clearly within the principle declared in *People* v. *Johnson, supra,* 70 Cal.2d 541, 558, as follows: "Once the defendant has been informed of his rights, and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them."

The appeal from the order denying the motion for new trial is dismissed. The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied January 12, 1970, and appellant's petition for a hearing by the Supreme Court was denied February 18, 1970. Peters, J., was of the opinion that the petition should be granted.